Brian WINSTON *v.* STATE of Arkansas

CR 02-622                                           131 S.W.3d 333

Supreme Court of Arkansas
Opinion delivered November 20, 2003

*Don R. Etherly*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

W.H. "Dub" Arnold, Chief Justice. Appellant Brian Winston was tried and convicted of two counts of capital murder and two counts of aggravated robbery by a Phillips County jury. The trial court sentenced Winston to imprisonment for life without parole on each capital-murder count and imprisonment for life on each aggravated robbery count with all sentences to be served concurrently. Winston appeals and brings two points on appeal: (1) whether the trial court erred in denying Winston's motion to suppress; and, (2) whether the trial court erred in finding Winston had been validly arrested. We hold that neither point has merit, and we affirm.

On November 15, 2000, Kimberly Amos and Karen Stiles were murdered at the Pizza Hut in West Helena where they were employees. Both women were shot in the head, and cash and checks had been stolen from the restaurant. Brian Winston, also an employee of Pizza Hut, was developed as a suspect and on November 17, 2000, Winston was arrested for the murder of the two women. At the time of Winston's arrest, no warrant had been issued. Following the arrest, Winston was taken to the West Helena Police Department where he was questioned by Investigators Dale Arnold and Barry Roy of the Arkansas State Police.

Investigators Arnold and Roy began the questioning by recording the time, advising Winston of his Miranda Rights, and asking him to write down his activities for November 15, 2000, the day of the murders. Winston signed the Miranda Rights waiver form at 8:43 p.m., and at 8:46 p.m., he wrote his statement in which he described his activities for the day in question. In that statement, completed at 9:28 p.m., he did not admit to killing the victims. Investigator Arnold and Roy failed to record anything from 9:28 p.m. until 10:07 p.m. During that time, Winston testified that Investigator Roy told him that "if you tell us you did it and I promise you that I'll help you. I'll go to bat for you." The Investigators also told Winston during that unrecorded time that they had the murder weapon.

Then, at 10:07 p.m., Investigator Arnold wrote a statement out for Winston, which he signed and wrote that he had read the statement. In both Winston's verbal statement and in the signed statements that he gave to the Investigators during the unrecorded time period and what Arnold wrote out for him, Winston stated that, "[t]he gun accidently went off when I was at the door with Karen and then I went blank. I didn't mean to kill nobody. . . I burned the bank bag and the checks at the apartment over the toilet . . . I burned the pants also." The interview was then concluded at 10:18 p.m., and at 10:25 p.m., Winston was interviewed on audiotape. In that audiotape, Winston recounted the night of the murders in his own words. Winston specifically stated that he had not been abused or treated badly, and he had been allowed to smoke cigarettes and to get something to drink.

At the trial of this case, Winston moved to suppress the in-custodial statements alleging that Winston was not advised of his rights prior to the second statement, Winston confessed because one the investigators promised to "go to bat" for him if he

would confess, and because Winston's arrest was invalid. The trial court denied Winston's motion and trial commenced with Winston being found guilty. This appeal followed.

Winston's first point on appeal is whether the trial court erred in denying his motion to suppress statements. Winston argues that the second statement he gave to the police officers, the statement written by Arnold but signed by Winston, should have been suppressed. Both Arnold and Roy testified at trial that the initial interview never ended but was continuing at all times. Winston argues that in the time period between the first recorded interview and the second recorded interview, Roy told him that, if he would tell them he committed the murders, he would help him. Winston argues that promise by Roy induced Winston to confess.

■ We recently clarified the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession. *Brown v. State*, 354 Ark. 30, 117 S.W.3d 598 (2003). This court makes an independent determination based upon the totality of the circumstances. *Grillot, v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003); *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001). Any conflict in the testimony of different witnesses is for the trial court to resolve. *Cox, supra.* In reviewing the trial court's ruling, we will reverse it only if it is clearly against the preponderance of the evidence. *Grillot, supra; Giles v. State*, 261 Ark. 413, 549 S.W.2d 479 (1977).

■ We have held that a statement made while an accused is in custody is presumptively involuntary; the burden is on the State to prove, by a preponderance of the evidence, that a custodial statement was given voluntarily and was knowingly and intelligently made. *Whitaker v. State*, 348 Ark. 90, 71 S.W.3d 567 (2002); *Lacy v. State*, 345 Ark. 63, 44 S.W.3d 296 (2001); *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998). It is well settled that a suspect's spontaneous statement, although made in police custody, is admissible against him or her. *Arnett, supra.* On review, we focus on whether the statement was made in the context of a police interrogation, meaning direct or indirect questioning put to appellant by the police with the purpose of eliciting a statement from him or her. *See Rhode Island v. Innis*, 446 U.S. 291 (1980).

In *Brown v. State*, this court has summarized our analysis of an allegedly false promise of leniency in both *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998), and *Pyles v. State*, 329 Ark. 73, 947 S.W.2d 754 (1997). That analysis is as follows:

> If a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made. In determining whether there has been a misleading promise of reward we look at the totality of the circumstances. The totality is subdivided into two main components[:] first, the statement of the officer and second, the vulnerability of the defendant. Because these two factors create such a multitude of variable facts, it has been impossible for us to draw bright lines of substantive distinction.

*Brown, supra; Connor,* 334 Ark. at 469-70; *Pyles,* 329 Ark. at 77-78 (quoting *Davis v. State,* 257 Ark. 388, 517 S.W.2d 515 (1974)).

If, during the first step, this court decides that the officer's statements are unambiguous false promises of leniency, there is no need to proceed to the second step because the defendant's statement is clearly involuntary. *See Pyles, supra; Durham v. State,* 320 Ark. 689, 899 S.W.2d 470 (1995); *Hamm v. State,* 296 Ark. 385, 757 S.W.2d 932 (1988). If, however, the officer's statement is ambiguous, making it difficult for us to determine if it was truly a false promise of leniency, we must proceed to the second step of examining the vulnerability of the defendant. *See Pyles, supra; Durham, supra; Hamm, supra.* Factors to be considered in determining vulnerability include: 1) the age, education, and intelligence of the accused; 2) how long it took to obtain the statement; 3) the defendant's experience, if any, with the criminal-justice system; and 4) the delay between the Miranda warnings and the confession. *Connor, supra; Free v. State,* 293 Ark. 65, 732 S.W.2d 452 (1987).

Here, taking into account the fact that this court makes an independent determination based upon the totality of the circumstances, the trial court did not err in denying Winston's motion to suppress his statements. The first step this court looks at is whether the officer's statements are unambiguous false promises of leniency. Winston argues that his statement should have been

suppressed because during the unrecorded time period of his interview he was told by Roy that he would "go to bat" for him. At the suppression hearing, Roy testified that Winston was not promised anything in exchange for his statement and that force was not used to get Winston to give the statement. Winston testified that he had been given his Miranda rights and that he understood those rights. Winston also testified that no one forced him to say anything in his statement, which he signed. Furthermore, Investigators Arnold and Roy testified that they did not make promises about going to bat for Winston. The trial court was not required to believe Winston's testimony. Resolving issues concerning the credibility of witnesses and conflicting testimony was within the province of the trial court. *Ilo v. State*, 350 Ark. 138. 85 S.W.3d 542 (2002). The trial court in this case did not abuse its discretion when it ruled that Winston's statements were voluntarily given and denied his motion to suppress.

For his second point on appeal, Winston argues that he was illegally arrested, and all evidence gathered as a result of that arrest should be suppressed. Winston avers that since no evidence was produced to show that the arresting officers acted with probable cause, the trial court committed error when it failed to find Winston's arrest was invalid. We disagree and affirm.

Winston testified that he was arrested around 7:00 p.m. on November 17, 2000, and it was stipulated that the warrant for arrest was not issued until after Winston was interviewed and confessed. Winston argues that this implies that he was arrested without a warrant and that any officer making that arrest did not have probable cause.

However, because there were no signs of a forced entry at the Pizza Hut and the fact that Winston was the last person seen at the restaurant on the night of the murders, Winston became a suspect. Furthermore, Winston's girlfriend, Brenda Davis, who also worked at Pizza Hut, gave a gun that she owned to law-enforcement officers. She told the officers that she and Winston were the only people who knew where the gun was kept and that Winston had told her to hide the gun after the murders occurred.

At the suppression hearing, the parties stipulated to the fact that both the affidavit and arrest warrant were executed after Winston was interviewed on November 17, 2000. The trial court

ruled that Winston had been validly arrested before he gave his statements and denied Winston's motion to suppress.

Ark. R. Crim. P. 4.1(1)(I) states:

(a) A law enforcement officer may arrest a person without a warrant if:

(I) the officer has reasonable cause to believe that such person has committed a felony

Probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected. *Humphrey v. State,* 327 Ark. 753, 940 S.W.2d (1997). Reasonable cause to arrest without a warrant exists when the facts and circumstances within the officers' collective knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant in a person of reasonable caution the belief that an offense has been committed by the person to be arrested. *Williams v. State,* 321 Ark. 344, 902 S.W.2d 767 (1995). All presumptions are favorable to the trial court's ruling on the legality of the arrest, and the burden of demonstrating error rests of the appellant. *Ross v. State,* 300 Ark. 369, 779 S.W.2d 161 (1989).

In *Williams,* the court there found that officers had reasonable cause to arrest a defendant when they collectively knew that the victim had been killed, that the defendant's voice had been heard at the time of the murder, and that the defendant was apparently the assailant. Moreover, it is well settled law that an illegal arrest does not void a subsequent conviction. *Hudgens v. State,* 324 Ark. 169, 919 S.W.2d 939 (1996):

Moreover, Hudgens testified that he was detained for more than twelve hours before he was allowed a phone call and before he was released from custody. He is in essence complaining of an illegal detention. We have addressed the effect of such a violation of Ark. R. Crim. P. 8.1 in *Bolden v. State,* 262 Ark. 718, 561 S.W.2d 281 (1978), by stating that a defendant is not entitled to a dismissal of the charge on which he is arrested when the rule is contravened. It is also well settled that an illegal arrest or detention does not void a subsequent conviction. *See Cook v. State,* 274 Ark. 244, 623 S.W.2d 820 (1981); *Bolden, supra.*

In the present case, the Investigator's testified that they had been given the murder weapon by Winston's girlfriend. The officers also had knowledge that Winston was the last person seen at the Pizza Hut the night of the murders, and he had access to a gun. In sum, this information constituted sufficient probable cause to arrest Winston without a warrant. Therefore, the trial court did not abuse its discretion when it ruled that Winston was not illegally arrested.

In compliance with Ark. Sup. Ct. R. 4–3(h), the record has been examined for all objections, motions, and requests made by wither party that were decided adversely to Winston, and no prejudicial error has been found.

Affirmed.