Jeremiah HOLLAND *v.* STATE of Arkansas

CR 04-735                                                            225 S.W.3d 353

Supreme Court of Arkansas
Opinion delivered January 26, 2006

*Leah Chavis*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Jeremiah Holland appeals his conviction for first-degree murder and sentence of life imprisonment. Holland argues that the circuit court erred in admitting his confession because it was obtained in the absence of a knowing and intelligent waiver and in violation of the juvenile code. He also argues that the circuit court erred in allowing the State to recall State Police Sergeant Mary Margaret Kesterson to testify in violation of Ark. R. Evid. 615. We find no error and affirm. Because Holland was sentenced to life, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1–2(a)(2).[1]

*Facts*

Late in the evening of July 16, 1991, or in the early hours of July 17, 1991, ten–year–old Sheera Fruitt was killed by blunt force trauma to the head and strangulation. The State's medical examiner testified that Sheera was strangled by use of a ligature, and that she was struck at least twice on the head prior to her death. The autopsy revealed bleeding in her eyes and lips. It also revealed extensive bleeding in her lungs and voice box that the medical examiner opined was evidence that Sheera was strangled for three minutes or more before she died.

---

[1] Holland filed a timely notice of appeal on June 29, 1993; however, his attorney failed to perfect the appeal. On June 11, 2004, Holland filed a motion for belated appeal. The motion was treated as a motion for rule on the clerk, and leave to appeal was granted by this court. *See Holland v. State,* 358 Ark. 366, 190 S.W.3d 904 (2004).

At the time of Sheera's death, Holland lived with Sheera and her mother Elaine Whitney. Elaine is Holland's aunt. On July 16, 1991, Elaine left for work about 8:30 p.m. Upon her return early the next morning, she found a note on her door telling her to go to her landlord's home. There she found Holland who alleged that Sheera had run away. Law enforcement were called and a search for Sheera lasted throughout the day. Law enforcement questioned Holland that day, and he denied any knowledge of where Sheera had gone. Dogs were brought in to assist in the search, and that evening the dogs indicated that something was in a pond near the Whitney home. About 7:00 p.m., Sheera's body was removed from the pond.

That night, Holland was taken into custody and questioned again. He again denied any knowledge of what had happened to Sheera. The next morning, Kesterson arrived to question Holland. Holland recounted the following story to Kesterson. After Elaine left for work, he and Sheera got into an argument about several things including whether Sheera could go to a friend's house. He tried to sleep that night, but he could not because Sheera would not stay in bed. In the early hours of the morning, Sheera was jumping on her bed, and Holland tried to get her to go back to sleep. She jumped off the bed and knocked him down so that he fell into the bathroom floor. She began to hit and kick him, and he got a curling iron and acted as if he were about to hit her. He denied hitting her with the curling iron, but stated that he put the cord around her neck and "pulled on it." Sheera stopped hitting and kicking him, and "grabbed her throat." She moved her hand some, and then stopped moving. He denied any intent to kill Sheera.

After sitting for a while and trying to decide what to do, he removed her clothing because he had decided to put her body in the pond and didn't want pieces of rotted clothing to "float up." He then carried the body to the pond struggling over fences and obstacles.[2] He threw Sheera's body in the water but found it did not sink. He removed his shoes and socks, retrieved the body, and then used a piece of clothesline to tie one rock to her chest and one to her legs. He then walked out into the pond until his head was just under water and dropped the body. He went back to the trailer

---

[2] The autopsy confirmed postmortem scratches and gouges to the body consistent with his description of injuries he inflicted as he carried her body.

home and removed his clothes, placing them in the bottom of a hamper where they were found by law enforcement.

Holland could not remember what he did with Sheera's clothes. Some months later when the trailer home was sold and moved, Sheera's clothes, shoes, and glasses were found stuffed inside a piece of PVC pipe lying on the ground beneath the trailer. Holland was charged with the violation of Ark. Code Ann. § 5-10-102 (Supp. 1991) in that with the "premeditated and deliberated purpose of causing the death of another person, he caused the death of . . . Sheera Fruitt."

### Ark. Code Ann. § 9-27-317(f)

Holland first argues that the case must be reversed because the State failed to comply with Ark. Code Ann. § 9-27-317(f) (Supp. 1991), which requires that any waiver of the right to counsel by a juvenile be in writing and signed both by the juvenile and by a parent, guardian, or custodian. The State argues that this issue was not raised and ruled on below and may not be raised on appeal. We have reviewed the abstract, addendum, and the record and do not find that Holland ever asked the circuit court to decide whether the State was bound by Ark. Code Ann. § 9-27-317(f). It is a well-settled principle of this court that we will not consider arguments made for the first time on appeal. *Harris v. State*, 363 Ark. 502, 215 S.W.3d 666 (2005). Because there is no circuit court ruling, order, or action subject to review on appeal, we do not address this issue.

### Involuntary Confession

Holland also argues that his statement was involuntary because it was given in response to an assurance by Kesterson that if he confessed she would "talk to the prosecutor and have [him] tried as a juvenile 'cause she knew him [the prosecutor].'" A statement induced by a false promise of reward or leniency is not a voluntary statement. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). When an interrogating law enforcement officer makes a false promise that misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been made voluntarily, knowingly, and intelligently. *Id.* However, for the statement to be involuntary, the promise must have induced or influenced the confession. *Id.* Holland argues that but for the hope or false assurance of being tried under the juvenile

code, he would not have confessed. At the suppression hearing, Holland testified that Kesterson made the assurance during their interview on July 17, 1991; however, he also testified that she made no promises to him. Kesterson testified that she made no assurance or promise about speaking to the prosecutor, and that after taking his statement, she told Holland that any decision on a charge was solely up to the prosecuting attorney. The transcript of the interview with Kesterson does not reveal any such assurance and to the contrary shows that confession was given of his own free will and that no promises were made. The circuit court denied the motion to suppress.

When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances including the age, experience, education, background, and intelligence of the defendant. *Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005). The circuit court considered the testimony, as well as Holland's age, his maturity, and the psychological reports, and concluded that the statement was voluntary. At issue in this case was the conflict between the testimony of Holland and Kesterson regarding an alleged promise about trial under the juvenile code. We defer to the superior position of the trial judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Id*. We will reverse a trial court's rulings on this issue only if it is clearly against the preponderance of the evidence. *Id*. We find no error and affirm.

### Recalling Kesterson to Testify

The rule under Ark. R. Evid. 615 was invoked in this case excluding witnesses from the courtroom so that they could not hear the testimony of other witnesses. Holland argues that the circuit court erred in allowing Kesterson to be recalled to the stand to testify regarding changes in her opinion of Holland's intent caused by a discussion she had with investigator Robert Hicks after her initial testimony. Kesterson testified twice in the State's case in the guilt phase. She first testified that she believed Holland's assertion in this interview that he did not intend to kill Sheera. After she first testified and was excused, she met with Robert Hicks who investigated Sheera's death. Hicks told her details about Sheera's injuries and showed her photographs of the body and the autopsy report. After this meeting, Kesterson was recalled in the State's case as the last witness. Upon recall, she affirmed that she

had testified earlier that she did not believe that Holland intended to kill Sheera. At this point in Kesterson's testimony, Holland objected, arguing that what was relevant was Kesterson's opinion at the time of the interview and that she had been "woodshedded." After this objection, the circuit court instructed the State to pose a hypothetical question to Kesterson, suggesting that the State ask her whether a subsequent understanding of the severity of the injuries in a case would change her opinion. The State did so, and Kesterson testified that her opinion would change. There was no objection to this hypothetical question.

██ Holland raises the issue of Ark. R. Evid. 615 for the first time on appeal. As already stated, issues raised for the first time on appeal will not be addressed. *Harris, supra.* Further, there was no ruling on the relevance objection. Failure to obtain a ruling precludes review in this court. *Dickerson, supra.*

### *4-3(h)*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Holland, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed.