Anna CLARK *v.* STATE of Arkansas

CR 07-1276 287 S.W.3d 567

Supreme Court of Arkansas
Opinion delivered September 25, 2008

*John Wesley Hall, Jr.,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Anna Clark appeals from her conviction of two counts of sexual assault in the third degree. She asserts five points on appeal: (1) the standard of review applied by this court to a trial court's ruling on the voluntariness of a confession does not comport with the standard of review set forth in *Ornelas v. United States,* 517 U.S. 690 (1996); (2) the circuit court erred in failing to suppress Appellant's confession; (3) the circuit court erred when it declined to recognize Appellant's right under the Arkansas Constitution to a recording of the entire interrogation; (4) the circuit court erred in failing to give Appellant's proffered non-Arkansas Model Jury Instructions-Criminal instruction on the jury's duty to determine the credibility to be given to a defendant's confession; and (5) the circuit court erred in failing to hold AMI Criminal instruction 110, the reasonable-doubt instruction, unconstitutional under *Jackson v. Virginia,* 443 U.S. 307 (1979), and in failing to give Appellant's proffered instruction on reasonable doubt. Because this case involves the interpretation and construction of the United States and Arkansas Constitutions and the appeal presents issues of first impression and issues of substantial public interest, which need clarification or development of the law, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(1) and (b)(1), (3), (4) and (5) (2008). We find no error and affirm the judgment of conviction.

Appellant was employed in early 2006 by the Arkansas Department of Correction as a psychologist, and one of her patients was inmate Dan Burns. On April 17, 2006, a correctional officer, Latasha Robinson, discovered Appellant having sexual intercourse with Burns in her counseling office. Warden Gaylon

Lay interviewed Appellant shortly after the alleged incident. At that point, she denied the allegations. Then, in a subsequent interview conducted by Detective Kenneth Whitmore on April 18, 2006, she admitted the allegations. The detective did not record the entire interview; rather, the interview began around 3:15 p.m. and the recording of the confession did not start until 4:30 p.m. No one else was present in the interview room. In a separate interview, inmate Dan Burns admitted the allegations.

By felony information, Appellant was charged with two counts of sexual assault in the third degree. She eventually filed a motion to suppress claiming that her confession was involuntary and the product of false promises. Appellant further argued that the State failed to rebut the presumption of involuntariness due to the lack of a complete recording of the entire interview, as required by article 2, section 8 of the Arkansas Constitution. Following a hearing, the circuit court determined that the statement was freely and voluntarily given and denied the motion to suppress.

At trial, Appellant proffered two jury instructions. One proffered instruction advised the jury that it was the sole judge of the weight and credibility to be given to the defendant's confession. The second proffered instruction added the following sentence to AMI Criminal 2d 110: "You must be convinced to [a] state of near certainty of the guilt of the accused." The circuit court refused to give either of the above proffered instructions.

At the conclusion of the trial, Appellant was convicted of both counts of sexual assault. She was sentenced to three years in the Arkansas Department of Correction and fined five thousand dollars on each count.

## I. Standard of Review – Determination of Voluntariness of a Confession

For her first point on appeal, Appellant argues that our standard of review for a trial court's determination on the voluntariness of a confession does not comport with the standard of review set forth in *Ornelas v. United States*, 517 U.S. 690 (1996). Specifically, she claims we have not engaged in a truly "independent review" as required by the U.S. Supreme Court in *Ornelas v. United States*, in that we apply a clearly erroneous standard of review to both the trial court's findings of fact and its determination of voluntariness.

The Supreme Court held in *Ornelas v. United States*, 517 U.S. 690 (1996), that determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless

search should be reviewed de novo on appeal; in conducting a de novo review, the reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by judges and law enforcement officers. The Court further held that the principal components of a determination of reasonable suspicion or probable cause will be the events that occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. *Id.* The first part of the analysis involves only a determination of historical fact, but the second is a mixed question of law and fact. *Id.*

■ In support of her argument that this court is constitutionally mandated to apply the *Ornelas* standard of review when we review a trial court's determination on the voluntariness of a confession, Appellant relies upon the Supreme Court's decision in *United States v. D.F.*, 517 U.S. 1231 (1996). The Court in that case directed the Seventh Circuit Court of Appeals to reconsider the voluntariness of a defendant's confession in light of *Ornelas v. United States. Id.* The Seventh Circuit subsequently held in *United States v. D.F.*, 115 F.3d 413 (7th Cir. 1997), that the concept of voluntariness is governed by *Ornelas v. United States.* Under the *Ornelas* standard, the determination of the historical facts of the case are the proper domain of the trial court and appellate review of its findings in that regard will be for clear error; whereas, the ultimate question of whether a confession is voluntary is a matter of law that must be reviewed de novo. *Id.* We note that an earlier line of federal cases addressing the voluntariness of a defendant's confession reflects a continuous invocation of the de novo standard of review and a reliance on the same considerations that informed the Court's decision in *Ornelas. See, e.g., Miller v. Fenton*, 474 U.S. 104 (1985); *Mincey v. Arizona*, 437 U.S. 385 (1978).

■ The federal de novo standard of review, however, has not been made binding on the states in cases where the voluntariness of a confession is at issue. Neither *Ornelas* nor *Miller* held that such a de novo review is constitutionally required under either the Fourth Amendment or the Fifth Amendment to the United States Constitution. *See Ornelas v. United States, supra; Miller v. Fenton, supra.* Several other states have reached a similar conclusion. *See State v. Ford*, 738 A.2d 937 (N.H. 1999); *State v. Brockman*, 528 S.E.2d 661 (S.C. 2000); *State v. Jenner*, 450 N.W.2d 710 (S.D.

1990), *cert. denied*, 510 U.S. 822 (1993); *State v. Jackson*, 918 P.2d 945 (Wash. App. 1996). We therefore conclude that we are not constitutionally mandated to apply the *Ornelas* standard of review when considering the voluntariness of a defendant's confession.

While this court is not constitutionally bound to apply the *Ornelas* standard of review in determining the voluntariness of a confession, our standard for reviewing a trial court's determination of voluntariness is consistent with the requirements of *Ornelas*. Upon appeal, we make an independent determination based upon the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). The ruling will be reversed if it is clearly against a preponderance of the evidence, *id.*, which "we [have] take[n] to be the same standard as the 'clearly erroneous' rule." *Degler v. State*, 257 Ark. 388, 392, 517 S.W.2d 515, 518 (1975). Any conflict in the testimony of different witnesses is for the trial court to resolve. *Cox v. State*, 345 Ark. 391, 47 S.W.3d 244 (2001); *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). In essence, this court reviews the trial court's findings of fact for clear error, and we make an independent, or de novo, determination of voluntariness. Indeed, it should be noted that when determining the voluntariness of a confession, our court has frequently applied a two-prong analysis similar to that set forth in *Ornelas*. *See, e.g.*, *Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007); *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004); *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004); *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001); *Hood v. State*, 329 Ark. 21, 947 S.W.2d 328 (1997); *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996); *Jackson v. State*, 284 Ark. 478, 683 S.W.2d 606 (1985).

We now take this opportunity to reiterate that in cases involving a ruling on the voluntariness of a confession, this court makes an independent determination based upon the totality of the circumstances. We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court.

## II. Motion to Suppress

For her second point on appeal, Appellant asserts that her confession was involuntary and the product of false promises. Based upon that assertion, she contends that the trial court erred in denying her motion to suppress.

■ A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Grillot v. State*, 353 Ark. at 310-11, 107 S.W.3d at 145. In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* at 311, 107 S.W.3d at 145-46. In making this determination, this court reviews the totality of circumstances surrounding the waiver. *Id.* at 310, 107 S.W.3d at 145.

The credibility of the testimony of different witnesses is for the trial court to resolve, and this court defers to the determinations of the trial judge. *Grillot v. State, supra.* The trial judge is not required to believe the testimony of any witness, especially that of the accused, since he or she is the person most interested in the outcome of the proceedings. *Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005).

■■ If a police officer makes a false promise that misleads the person in custody, and the person in custody gives a confession because of that false promise, then the confession has not been voluntarily, knowingly, and intelligently made. *Winston v. State*, 355 Ark. 11, 16, 131 S.W.3d 333, 336 (2003). In determining whether there has been a misleading promise of reward we look at the totality of the circumstances. *Id.* The totality is subdivided into two main components: first, the statement of the officer and second, the vulnerability of the defendant. *Id.* We employ a two-step analysis in determining the voluntariness of the confession. *Id.* If during the first step, this court decides that the officer's statement is an unambiguous false promise of leniency, there is no need to proceed to the second step because the defendant's statement is clearly involuntary. *Id.* If, however, the officer's statement is ambiguous, making it difficult for us to determine if it was truly a false promise of leniency, we must proceed to the second step of examining the vulnerability of the defendant. *Id.* Factors to be considered in determining vulnerability include: (1) the age, education, and intelligence of the accused; (2) how long it took to obtain the statement; (3) the defendant's experience, if any, with the criminal justice system; and (4) the delay between the *Miranda* warnings and the confession. *Id.*

We first look at whether the officer made an unambiguous false promise of leniency. Appellant testified that, during the unrecorded one hour and fifteen minutes of her interview, Detective Whitmore made false promises in order to induce her to confess. According to Appellant, the detective promised to keep the matter out of the press, and he assured her that she would not go to jail and that, hopefully, it would not affect her license as a psychologist. Detective Whitmore denied making any promise of leniency in return for her statement, but he did acknowledge telling her that he would speak to the prosecutor. As stated earlier, any conflict in the testimony of different witnesses is for the trial court to resolve. *Grillot v. State, supra.* We defer to the superior position of the trial judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Holland v. State,* 365 Ark. 55, 59, 225 S.W.3d 353, 356 (2006). Based upon the record before us, we cannot say that the trial judge was clearly erroneous in his evaluation of the credibility of the witnesses.

Even if we were to conclude that Detective Whitmore's promise to talk to the prosecutor was an ambiguous promise of leniency, which is contrary to our case law, *see Holland v. State, supra,* we cannot say that Appellant was particularly vulnerable at that point in time such that her free will was overborne. It is undisputed that Appellant signed an acknowledgment and waiver of her *Miranda* rights. She testified that she had a doctoral degree in psychology and considered herself to be fairly intelligent. She admitted that the detective had reviewed her *Miranda* rights with her before she agreed to talk with him. Appellant also knew that having sex with an inmate was a crime, and that if she was charged, she could lose her license and go to jail. As an employee of the Department of Correction, Appellant was not a total stranger to the criminal justice system. Moreover, between the time she signed the rights form and the time she gave her statement, a period of one hour and fifteen minutes elapsed, which is not undue. In viewing the totality of the circumstances, we conclude that Appellant's confession was voluntarily, knowingly, and intelligently given.

### III. Constitutional Right to Recording of Entire Interview

Appellant next urges this court to construe the due process clause in article 2, section 8 of the Arkansas Constitution to include a constitutional right to a recording of all phases of a police interrogation leading to a confession. She concedes that no federal

court has recognized such a right under the U.S. Constitution, but points to four recent decisions by our court construing the Arkansas Constitution to grant more rights than are granted under the U.S. Constitution. *See Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002); *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002); *Box v. State*, 348 Ark. 116, 71 S.W.3d 552 (2002); *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002).

In the instant case, however, we decline to recognize a constitutional right to recordation under the due process clause in the Arkansas Constitution. Ark. Const. art. 2, § 8. Indeed, Appellant acknowledges this court's prior holding in *State v. Sheppard*, 337 Ark. 1, 987 S.W.2d 677 (1999), that the lack of a recording does not invoke a constitutional safeguard. Even before *State v. Sheppard*, we declared that no Arkansas law requires the police to record the interrogation in its totality. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996). As this court explained in the *Misskelly* case, "[w]e will consider such a factor in the totality of the circumstances mix, but we will not invalidate a confession for that reason alone." *Id.* at 472, 915 S.W.2d at 714. In the absence of any indication that our court has traditionally viewed custodial interrogation requirements more rigorously than the federal courts, we reject the expansion of constitutional rights proposed by Appellant. *Polston v. State*, 360 Ark. 317, 201 S.W.3d 406 (2005).

With regard to other state courts that have addressed similar arguments under their respective state constitutions, only the Supreme Court of Alaska has recognized a right to have the entire interview recorded under its state constitution. *Stephan v. State*, 711 P.2d 1156 (Alaska 1985). While many courts have noted approvingly the protection provided by a complete recording of an interrogation, they have declined to hold that recording the entire interrogation is required by their respective state constitutions. *See Starks v. State*, 594 So. 2d 187, 196 (Ala. Crim. App. 1991), *cert. denied*, 594 So. 2d 187 (Ala. Crim. App. 1992); *State v. Jones*, 49 P.3d 273 (Ariz. 2002); *People v. Holt*, 937 P.2d 213 (Cal. 1997), *cert. denied*, 522 U.S. 1017 (1997); *People v. Raibon*, 843 P.2d 46 (Colo. Ct. App. 1992); *State v. James*, 678 A.2d 1338 (Conn. 1996); *Coleman v. State*, 375 S.E.2d 663 (Ga. Ct. App. 1988); *State v. Kekona*, 886 P.2d 740 (Haw. 1994); *State v. Rhoades*, 809 P.2d 455 (Idaho 1991), *cert. denied*, 504 U.S. 987 (1992); *People v. Everette*, 543 N.E.2d 1040 (Ill. App. Ct. 1989), *rev'd on other grounds*, 565 N.E.2d 1295 (Ill. 1990); *Stroker v. State*, 692 N.E.2d 1386 (Ind. Ct.

App. 1998); *State v. Morgan,* 559 N.W.2d 603 (Iowa 1997); *State v. Speed,* 961 P.2d 13 (Kan. 1998); *Brashars v. Commonwealth,* 25 S.W.3d 58 (Ky. 2000), *cert. denied,* 531 U.S. 1098 (2001); *State v. Thibodeaux,* 750 So. 2d 916 (La. 1999), *cert. denied,* 529 U.S. 1112 (2000); *State v. Buzzell,* 617 A.2d 1016 (Me. 1992); *Baynor v. State,* 736 A.2d 325 (Md. 1999); *Commonwealth v. Fryar,* 610 N.E.2d 903 (Mass. 1993); *People v. Fike,* 577 N.W.2d 903 (Mich. Ct. App. 1998), *appeal denied,* 590 N.W.2d 64 (Mich. 1999); *State v. Scales,* 518 N.W.2d 587 (Minn. 1994); *Williams v. State,* 522 So. 2d 201 (Miss. 1988); *Jimenez v. State,* 775 P.2d 694 (Nev. 1989); *State v. Barnett,* 789 A.2d 629 (N.H. 2001); *State v. Cook,* 847 A.2d 530 (N.J. 2004); *People v. Martin,* 741 N.Y.S.2d 763 (N.Y. App. Div. 2002), *appeal denied,* 778 N.E.2d 560 (N.Y. 2002); *State v. Thibodeaux,* 549 S.E.2d 501 (N.C. 1995); *State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998); *Commonwealth v. Craft,* 669 A.2d 394 (Pa. Super. Ct. 1995); *State v. Godsey,* 60 S.W.3d 759 (Tenn. 2001); *State v. James,* 858 P.2d 1012 (Utah Ct. App. 1993); *State v. Gorton,* 548 A.2d 419 (Vt. 1988); *State v. Spurgeon,* 820 P.2d 960 (Wash. Ct. App. 1991), *review denied,* 827 P.2d 1393 (Wash. 1992); *In re Jerrell C. J.,* 699 N.W.2d 110 (Wis. 2005); *State v. Kilmer,* 439 S.E.2d 881 (W. Va. 1993); *Gale v. State,* 792 P.2d 570 (Wyo. 1990).

We are also aware that many states, while declining to constitutionally require the recording of an entire interrogation, have adopted the requirement through the court's supervisory power or through legislation. *See, e.g.,* D.C. Code § 5-116.01 (2006); 725 Ill. Comp. Stat. Ann. 5/103-2.1 (West 2006); Wis. Stat. § 972.115 (2006); N.J. Crim. Prac. R. 3:17; *State v. Scales,* 518 N.W.2d 587; *State v. Barnett,* 789 A.2d 629; *In re Jerrell C. J.,* 699 N.W.2d 110 (juveniles).

With regard to Appellant's policy arguments, the New Jersey Supreme Court's decision in *State v. Cook,* 847 A.2d 530, contains a succinct summary of the policy arguments for and against a recording requirement. The benefits of requiring a complete recording include: (1) protection against admission of involuntary or invalid confessions and enhancement of the reliability of confessions; (2) protection for police officers from false allegations and improved ability of the police to assess the guilt or innocence of suspects; and (3) attainment of an objective and reviewable record that would enhance a judge or juror's assessment of credibility, and preservation of judicial resources by discouraging defendants from raising "frivolous" pretrial chal-

lenges to confessions. *Id.* Some of the policy arguments against a recording requirement include: (1) cost in the purchase and maintenance of recording equipment, which would be a financial burden for some municipalities; and (2) the potential to hamper police interrogation techniques and reduce the ability of police officers to obtain truthful confessions. *Id.*

We are also aware of the differences among states that have adopted a recording requirement. States have not been consistent in designating the portions of an interrogation that must be recorded. For example, Minnesota requires that all custodial interrogations, including any information about rights, waiver of those rights, and all questioning, be recorded electronically when feasible and whenever questioning occurs at a place of detention. *State v. Scales, supra.* In contrast, New Hampshire does not require a recording of the administration of a defendant's *Miranda* rights or the defendant's subsequent waiver of those rights, but it does require a complete recording following the waiver of a defendant's *Miranda* rights. *State v. Barnett, supra.*

States are also in disagreement as to what sanctions should be imposed when law enforcement fails to record an interrogation. The Supreme Courts of Minnesota and Alaska have both held that failure to record the complete interrogation will result in the exclusion of the entire interrogation, absent certain narrow exceptions. *Stephen v. State, supra; State v. Scales, supra.* The Supreme Court of New Hampshire, on the other hand, has held that where the incomplete recording of an interrogation results in the exclusion of the tape recording itself, evidence gathered during the interrogation may still be admitted in alternative forms, subject to the usual rules of evidence. *State v. Barnett, supra.*

To sum up, we conclude that the case law and secondary authority cited by Appellant reflects little if any agreement regarding how electronic recordation should be implemented, or whether it should be required, encouraged formally through evidentiary rules, or encouraged through other informal means. *State v. Cook, supra.* In view of these questions and many others that merit consideration, and bearing in mind the difficult task of drafting a rule that would clearly delineate the parameters of a recording requirement, we believe that the criminal justice system will be better served if our supervisory authority is brought to bear on this issue. We therefore refer the practicability of adopting such a rule to the Committee on Criminal Practice for study and consideration.

■ Even if we were to adopt a recording requirement today and exclude the confession in this case, any resulting error would be harmless in light of the otherwise overwhelming evidence of Appellant's guilt. Officer Latasha Robinson was an eyewitness to the alleged incident, and Dan Burns admitted the allegations. Under the harmless-error rule enunciated in *Arizona v. Fulminante*, 499 U.S. 279 (1991), and adopted by this court in *Riggs v. State, supra*, the remaining evidence in the instant case would be sufficient to prove beyond a reasonable doubt that the admission of Appellant's confession did not influence the jury's verdict.

### IV. Proffered Jury Instructions

Appellant argues that the trial court should have given her proffered jury instruction directing the jury to make an independent determination of the credibility of a confession. The State argues that AMI Criminal 2d 104 covers the proffered instruction. With regard to our standard of review, we have stated that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 308, 239 S.W.3d 467, 476 (2006). We will not reverse a trial court's decision to give or reject an instruction unless the court abused its discretion. *Id.*

■ A non-AMI Criminal instruction should be given only when the trial judge finds that the AMI Criminal instruction does not state the law or that AMI Criminal does not contain a needed instruction on the subject. *Ventress v. State*, 303 Ark. 194, 794 S.W.2d 619 (1990). Just because an appellant's proffered instructions contain correct statements of the law does not mean that it was error for the trial court to refuse to give them. *Leach v. State*, 311 Ark. 485, 845 S.W.2d 11 (1993).

Appellant's proffered instruction reads as follows:

> The jury being the sole judges of the weight of the evidence and the credibility of the witnesses applies to whatever weight and credibility the jury determines should be given to a statement made by the defendant to a law enforcement officer.

AMI Criminal 2d 104, which instructs the jury that they are the sole judge of the weight and credibility of the witnesses, necessarily covers the subject of the weight and credibility to be given to a defendant's confession. The AMI Criminal instruction accurately states the law

and sufficiently addresses the particular evidence that Appellant seeks to emphasize; thus, the trial court did not abuse its discretion in refusing to give the requested instruction.

Appellant's reliance upon *Austin v. State*, 193 Ark. 833, 103 S.W.2d 56 (1937), is misplaced. That case was decided prior to *Jackson v. Denno*, 378 U.S. 368 (1964), when the Supreme Court established the rule that the voluntariness of a defendant's statement must first be determined by a judge at a pretrial hearing. *See Walker v. State*, 253 Ark. 676, 488 S.W.2d 40 (1972). After the judge makes the determination of admissibility, it will be a matter of argument by counsel as to the weight to be given that evidence. AMI Criminal 200 cmt. The trial judge correctly pointed out to Appellant that she could make her argument as to the weight and credibility of her confession in her closing argument.

Appellant next contends that AMI Criminal 2d 110 is unconstitutional under the federal and state due-process clauses and *Jackson v. Virginia, supra*, in that it fails to properly underscore the importance of the reasonable-doubt standard of proof. Specifically, Appellant argues that the term "abiding conviction" is too general and undefined. Appellant requested that the following sentence be added to AMI Criminal 2d 110: "you must be convinced to [a] state of near certainty of the guilt of the accused." The proffered instruction was denied by the circuit court.

The State contends that AMI Criminal 2d 110 satisfies due process under the test enunciated in *Victor v. Nebraska*, 511 U.S. 1 (1994). The State also points out that non-model instructions are disfavored and should be given only if the model instructions do not correctly state or cover the necessary law. Once again, we will not reverse a trial court's decision to give or reject an instruction unless the court abused its discretion. *Vidos v. State, supra.*

■■■ In criminal cases, the government must prove every element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). The beyond-a-reasonable-doubt standard of proof "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in criminal proceedings. *Jackson v. Virginia*, 443 U.S. at 315 (citing *In re Winship, supra*). At the same time, by impressing upon the fact-finder the need to reach a subjective state of near certitude of the

guilt of the accused, the standard of proof symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Id.*

 While due process mandates that the standard of proof be beyond a reasonable doubt, the U.S. Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. *Victor v. Nebraska*, 511 U.S. 1. So long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. *Id.* Instead, "taken as a whole, the instructions [must] correctly convey[ ] the concept of reasonable doubt to the jury." *Holland v. United States*, 348 U.S. 121, 140 (1954). The proper inquiry regarding the constitutionality of a jury instruction is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard. *Victor v. Nebraska, supra.* The language in AMI Criminal 2d 110 has been approved by the U.S. Supreme Court in prior cases. AMI Criminal 2d 110 reads as follows:

> Reasonable doubt is not a mere possible or imaginary doubt. It is a doubt that arises from your consideration of the evidence and one that would cause a careful person to pause and hesitate in the graver transactions of life. A juror is satisfied beyond a reasonable doubt if after an impartial consideration of all the evidence he has an abiding conviction of the truth of the charge.

In *Victor v. Nebraska, supra*, the Supreme Court overruled an objection to the phrase "reasonable doubt is not a mere possible or imaginary doubt." In rejecting the challenge, the Court explained, "[a] 'reasonable doubt,' at a minimum, is one based upon 'reason.' " *Victor v. Nebraska*, 511 U.S. at 17 (citing *Jackson v. Virginia*, 443 U.S. at 317). Everything is open to some possible or imaginary doubt, and a fanciful doubt is not a reasonable doubt. *Id.* Likewise, an instruction stating that "a doubt that would cause a reasonable person to hesitate to act" is a formulation the Court has repeatedly approved. *Victor v. Nebraska*, 511 U.S. at 20; *Holland v. United States*, 348 U.S. at 140. The phrase "after an impartial consideration of all the evidence" has also been approved. *Victor v. Nebraska, supra.*

Appellant challenges the use of the words "abiding conviction," despite the fact that such terminology has been specifically

approved by the Supreme Court. *Victor v. Nebraska, supra; Hopt v. Utah,* 120 U.S. 430 (1887). In the *Victor* case, the Court held that although "moral certainty" as used in the jury instruction was ambiguous, "the reference to moral certainty, in conjunction with the abiding conviction language, 'impress[ed] upon the factfinder the need to reach a subjective state of near certitude of the guilt of accused.' " *Victor v. Nebraska,* 511 U.S. at 15 (quoting *Jackson v. Virginia,* 443 U.S. at 315). Similarly, the Court stated "[a]n instruction, cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." *Id.* at 14-15.

In comparing the "near certainty" language proposed by Appellant to the abiding-conviction language used in AMI Criminal 2d 110, we conclude that the latter phrase requires a higher level of conviction. As the Court explained in the *Hopt* case, the word "abiding" suggests "settled and fixed," or a conviction that may follow a careful examination and comparison of the whole evidence. *Hopt v. Utah,* 120 U.S. at 439. "It is difficult to conceive what amount of conviction would leave the mind of a juror free from a reasonable doubt, if it be not one which is so settled and fixed as to control his action in the more weighty and important matters relating to his own affairs." *Id.* By instructing the jury that a reasonable doubt is one that "would cause a careful person to pause and hesitate in the graver transactions of life," and that a juror has to have an "abiding conviction of the truth of the charge," AMI Criminal 2d 110 requires the same level of conviction as expressed in the jury instructions approved in *Hopt v. Utah.*

In conclusion, we hold that AMI Criminal 2d 110, taken as a whole, correctly conveys the concept of reasonable doubt to the jury. There is no reasonable likelihood that the jurors who determined Appellant's guilt applied the instruction in a way that violated due process under the U.S. and Arkansas Constitutions.

Affirmed.

GLAZE, J., not participating.