

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–13–796

| | |
|---|---|
| | **Opinion Delivered** April 23, 2014 |
| GREGORY JERRY CROSEFORD<br>APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. CR–2012-612-5] |
| V. | HONORABLE JODI RAINES DENNIS, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## RHONDA K. WOOD, Judge

Gregory Croseford entered a conditional guilty plea to a rape charge. He reserved his right to appeal the circuit court's denial of his motion to suppress.[1] We affirm the circuit court's ruling because Croseford's confession was voluntary and he never invoked his right to remain silent. We further hold that the court did not err when it allowed police officers to testify, from memory, about the confession.

Police suspected that Croseford had committed rape of a minor and subsequently interviewed him. Detective Marcia Oliver read him his *Miranda* rights from a written form, which he signed and initialed. Oliver began questioning him. She testified that Croseford was apprehensive and unresponsive to her probings about the crime: "Well, he would get quiet. Sometimes he would get quiet. Most of the time, he was denying it or

[1]Ark. R. Crim. P. 24.3(b)(i) (2013).



he would just sit there and look at me." At some point, Deputy Chief Sergeant and another detective entered the room. After listening for a short time, Chief Sergeant asked the other detectives to leave.

During Chief Sergeant's one-on-one interrogation, Croseford confessed to the rape. After that, Croseford repeated his confession for an audio-tape recording. The police, however, lost the recording. About two months later, Chief Sergeant made a written summary of Croseford's confession.

The key issue arose during Detective Oliver's testimony during the suppression hearing. She testified as follows:

> Q: So after Mr. Croseford was read his *Miranda* rights and—did he agree to speak with you?
>
> A: No. He didn't—he didn't want to talk to me because I was a female, so he said.
>
> . . . .
>
> Q: Okay. All right. So let's go back to the question I asked you. I asked if Mr. Croseford, after he signed his rights, did he also at that point agree to give you a statement or want to speak with you?
>
> A: Yes, ma'am. Yes, ma'am.
>
> Q: Okay. All right. And let's talk about what happened during that conversation with Mr. Croseford.
>
> A: Well, every time I would ask him something, he would deny it and—or he wouldn't answer. And by that time, Deputy Chief Sergeant was downstairs, and he came down to the office. And he stood there for a while, and he told me—he said, ["]Well, let me speak to him,["] since he didn't want to talk to me. And so Deputy Chief Sergeant and Jerry Lambert went inside the room and closed the door, and they was [*sic*] in there with him for awhile.

Croseford argues that Detective Oliver's testimony indicates that he invoked his right to remain silent during their interview; therefore, his subsequent confession to Chief Sergeant should be suppressed.[2] Furthermore, Croseford maintains that the police should have been prohibited from testifying about his confession because they lost the audio recording and that it was error for the court to allow them to testify from memory.

This court reviews a circuit court's denial of a defendant's motion to suppress a confession by making an independent determination based on the totality of the circumstances, and the ruling will be reversed only if it is clearly against the preponderance of the evidence. *Fritts v. State*, 2013 Ark. 505, __ S.W.3d __. If a suspect "indicates in any manner . . . that he wishes to consult with an attorney [or] . . . that he does not wish to be interrogated, the police may not question him." *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). A defendant may cut off questioning at any time by "unambiguously" invoking his right to counsel or his right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370 (2010); Ark. R. Crim. P. 4.5 (2013).[3] This right to terminate questioning is a critical safeguard that must be scrupulously honored when properly invoked. *Michigan v. Mosely*, 423 U.S. 96 (1975).

---

[2]In passing, Croseford argues that the State failed to present a necessary witness at the suppression hearing. That witness, Detective McFadden, was present at some point before Croseford's confession. This argument was never raised below, and we do not address it now. *Koster v. State*, 374 Ark. 74, 90, 286 S.W.3d 152, 165 (2008).

[3]"There is no distinction between the right to counsel and the right to remain silent with respect to the manner in which they are effected. Both must be unambiguously and unequivocally invoked." *Sykes v. State*, 2009 Ark. 522, at 14, 357 S.W.3d 882, 890 (internal citations omitted).



It is undisputed that Croseford was advised of and understood his *Miranda* rights before he began speaking. In addition, the circuit court noted in its order that there was no testimony that Croseford was coerced or induced to confess or that he was in any way impaired during the interview. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384. Thus, the issue is not whether Croseford waived his rights, but whether he subsequently invoked his rights to remain silent and to cut off police questioning.

We hold that Croseford did not invoke his right to remain silent. There is no indication that Croseford unambiguously told the police that he wanted them to cease their questioning. On the contrary, he answered some of Detective Oliver's questions. According to Detective Oliver's testimony, Croseford would either deny questions that she asked him or would not respond altogether. *Cf. Whitaker v. State*, 348 Ark. 90, 98, 71 S.W.3d 567, 572 (2002) (holding that the defendant had invoked her right to remain silent by repeatedly saying "no" in response to the officer's question "[d]o you want to tell me what's going on?"). Croseford never said that he wanted to remain silent or that he didn't want to talk to the police. *See Berghuis*, 560 U.S. at 382 ("[The suspect] did not say that he wanted to remain silent or that he did not want to talk to the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning.").

Moreover, Detective Oliver clarified her testimony that Croseford told her he did not want to talk to her. And it is clear from context that Croseford avoided talking to



Oliver for propriety's sake, not because he invoked his right to remain silent. She testified about what happened after the confession as follows:

> A:     Okay. But they told me what all he said, so then I went back to the office and I talked to him. I said—
>
> Q:     You talked to who?
>
> A:     Mr. Gregory Croseford. I said, ["]Why did you have a problem talking with me?["] And he told me, ["]Because you're a female, and I didn't feel right talking to you.["]

Chief Sergeant also testified that Croseford told him he didn't want to speak with Oliver because she was a female. So Oliver's earlier comment that Croseford did not want to talk refers to his reluctance to talk to a female about raping a minor child. At most, Croseford's comments to Oliver were ambiguous, and the police were not required to cut off questioning after he made them.

Next, Croseford argues that the circuit court erred by allowing the officers to testify about the confession because they lost the audio recording. To support this argument, Croseford cites *Williamson v. State*, 263 Ark. 401, 565 S.W.2d 415 (1978). *Williamson*, however, is clearly inapposite. There, our supreme court reversed a conviction because both the State and the lower court had failed to turn over information to the defense. Here, there is no audio record to turn over. The police testified that they lost it. There is also no requirement that the police record an interrogation. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).[4] Failure to record is just one factor "in the totality of

---

[4]Arkansas Rule of Criminal Procedure 4.7 states that "whenever practical, a custodial interrogation at a jail, police station, or other similar place, should be

the circumstances mix." *Id.* at 302, 287 S.W.3d at 574 (citing *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996)).

For more on this point, *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1988), is helpful. In that case, the police lost the defendant's audio-recorded confession, and the circuit court allowed them to read a written transcription into evidence. Our supreme court reversed and remanded for a new trial. It specifically noted, however, that "[t]his does not mean . . . that upon retrial the trial court cannot allow oral testimony about the confession into evidence." *Id.* at 389, 757 S.W.2d at 934. The circuit court took that route in this case when it allowed the police officers to testify from memory about the confession. Based on *Hamm*, *supra*, this was not error.

To sum up, considering all of the circumstances, the circuit court's decision denying the motion to exclude testimony about Croseford's confession was not clearly against the preponderance of the evidence.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Bill Luppen*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rebecca B. Kane*, Ass't Att'y Gen., for appellee.

---

electronically recorded." That Rule became effective on September 1, 2012. Because the interrogation took place August 21, 2012, the new rule was inapplicable.