Jason PYLES *v.* STATE of Arkansas

CR 96-1314                                              947 S.W.2d 754

Supreme Court of Arkansas
Opinion delivered June 16, 1997
[Petition for rehearing denied July 14, 1997.]

*Young & Finley*, by: *Dale W. Finley* and *Richard H. Young*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Jason Pyles, was convicted of the first-degree murder of Rick Humphries. Pyles appeals that conviction based upon seven argu-

ments of error. Specifically, Pyles contends that the trial court erred by the excluding testimony of a proffered defense witness, testimony relating to a polygraph, and testimony of a note written to the victim. Also, Pyles contends error in the admission of evidence relating to the use of Luminol testing. Pyles claims that the trial court abused its discretion in scheduling the trial well into the night, which resulted in prejudice by requiring the entire defense to be submitted hurriedly. Lastly, Pyles contends that the trial court erred in denying his motion to suppress the confession because it was not voluntary. We agree that Pyles's confession was not voluntary and, therefore, reverse and remand for a new trial.

On May 18, 1994, Pyles called the police to report finding Rick Humphries dead. The police suspected Pyles in the murder. On May 19, 1994, officers arrested Pyles at his girlfriend's parents house on two warrants for unrelated misdemeanors, criminal mischief and harassment.

When the officers arrived at the house, Pyles was asleep in a bedroom and not fully clothed. After awakening him, they left the bedroom and awaited for him to come out into the living room. When he did come out of the bedroom, he was instructed of his *Miranda* rights and given a pat down. There are disputed accounts about whether the officers found a small 35-millimeter film canister during the pat down or when Pyles emptied his pockets in order to leave personal items with a young man at the house. Despite this, the police, upon seeing the canister asked Pyles what was in it and he was evasive. The officers opened the canister and found three small packets of what was identified later as methamphetamine.

Pyles was taken into custody on the misdemeanor warrants and at that time signed an acknowledgment that he had been advised of his *Miranda* rights and also signed a waiver of those rights. Pyles subsequently confessed to the murder of Humphries.

Appellant was charged with the murder of Rick Humphries on May 23, 1994. At that time he was also charged with possession of a controlled substance with intent to deliver. He was found guilty on the possession charge on May 17, 1995. On April

17 1996, Pyles was found guilty of murder in the first degree in the Sebastian County Circuit Court.

## I. Confession Obtained by False Promises

Appellant contends that his confession should be suppressed because the officers made false promises that induced him to confess. He claims that the eliciting of the confession violated his Fifth and Fourteenth Amendments rights because it was not a voluntary statement.

Pyles contends that Officer Donald Steven Howard promised him that he would "help him in every way in the world." Pyle's version of the interrogation is that the officers repeatedly told him that if the murder was done in self-defense, a court would be more lenient.

Following a long interrogation of several hours by other officers, Officer Howard began to interrogate Pyles. Officer Howard testified that he knew Pyles prior to the arrest through baseball and that he visited with Pyles about that. He testified that he told Pyles that it was important for him to tell the truth and that "they knew he did it." He also testified that he told Pyles that he did not believe that Pyles was a cold-blooded killer and that he told Pyles that he would "do everything in the world [he] could for him." Pyles claims that he confessed after Officer Howard made this statement. The State concedes that a questionable promise may have been made to the appellant.

In *Davis v. State*, 257 Ark. 388, 517 S.W.2d 515 (1974), this Court examined a confession challenged as involuntary by the appellant. We held that we would examine such challenges on a case-by-case basis and make and determine whether a confession was voluntary based upon the totality of the circumstances. Additionally, we held:

> If a police official makes a false promise which misleads a prisoner, and the prisoner gives a confession because of that false promise, then the confession has not been voluntarily, knowingly and intelligently made. In determining whether there has been a misleading promise of reward we look at the totality of the circumstances. The totality is subdivided into two main compo-

nents, first, the statement of the officer and second, the vulnerability of the defendant. Because these two factors create such a multitude of variable facts, it has been impossible for us to draw bright lines of substantive distinction.

*Id.* at 267.

In determining the totality of the circumstances, the statements of the officer are first examined. If statements are clearly promises it is not necessary to look farther. *Id.*

In *Gardner v. State*, 263 Ark. 739, 569 S.W.2d 74 (1978), we determined that a confession is not voluntary if the officer makes statements which are calculated to deceive. We have found no fault with an interrogator trying to persuade an accused to tell the truth or to answer questions, even though there may be misrepresentations of fact made by the interrogator, so long as the means employed are not calculated to procure an untrue statement and the confession is otherwise voluntarily made. *Id.* A misrepresentation will not invalidate a confession by the defendant as long as it does not constitute an improper influence. *Rouw v. State*, 265 Ark. 797, 581 S.W.2d 313 (1979).

In *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987), the appellant challenged the voluntariness of his confession. He voluntarily went to the station for questioning in a rape case involving his nephew. Upon his arrival, he was informed of his *Miranda* rights, and during questioning for approximately one hour, he maintained his innocence. A sergeant then related to Free information which he had learned at a seminar on sexual abuse; he told Free that adult males who have preference for young males are extremely difficult to treat, and the first step is to admit the existence of the problem. He also stated that a court could order counseling and that penitentiaries might have counseling available. It was shortly after this discussion that Free confessed to having had oral sex with the victim on five separate occasions. This court upheld the validity of that confession and noted that the sergeant was trying to persuade Free to tell the truth and that there was no evidence that his statement was meant to mislead Free.

Often it is difficult to determine whether an officer's statement is a promise of reward or leniency, a statement meant to

deceive, or merely an admonishment to tell the truth. In *Wright v. State*, 267 Ark. 264, 590 S.W.2d 15 (1979), we allowed a statement by an interrogating officer that, "things would go easier if you told the truth." However, in *Tatum v. State*, 266 Ark. 506, 585, S.W.2d 957 (1979), we determined that the statement "I'll help you any way that I can" was a false promise. On several occasions, we have held statements to be false promises: when the officer claimed he "would do all that he can," *Hamm v. State*, 296 Ark. 385, 757 S.W.2d 932 (1980), and when the officer said, "I'll help all that I can." *Shelton v. State*, 251 Ark. 890, 475 S.W.2d 538 (1972)

The second factor pointed out in *Davis v. State, supra*, is the vulnerability of the defendant; in instances where it is difficult to ascertain the meaning of a statement, the vulnerability of a particular defendant becomes important.

In the case before us, the record reflects that Pyles became emotional when he was interrogated by Officer Howard. Both Pyles and Officer Howard testified that Pyles held the officer's hands and wept. Pyles testified that he was emotional and tired from a long interrogation. The statement that Officer Howard made closely resembles those which we held unacceptable in *Tatum, Hamm,* and *Shelton, supra*. Therefore, we must conclude that the officer's action constituted a false promise that resulted in an involuntary confession. We, therefore, reverse on this point. We address only those remaining points that are likely to arise upon retrial.

## II. Exclusion of Testimony of Elizabeth Foster

One of Pyles's defenses was that someone else, namely David Landry, could have committed the murder. Testimony of Elizabeth Foster, a former girlfriend of Landry's, was proffered. In a suppression hearing before the trial judge, she testified that Landry had a knife similar to the one that was used in the murder, but she could not identify the murder weapon as Landry's knife. She testified that Landry was a violent person, that he had a drinking problem, and that he had previously threatened her. Also, she testified that he once told her that he would cut someone's throat

if he ever murdered someone. However, she testified that she had never heard Landry make any threats against the victim.

The trial court excluded this testimony, and Pyles challenges that ruling based upon the contention that it is relevant evidence which should have been allowed. In *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), we addressed the issue of admitting evidence intended to incriminate others of a crime charged against a defendant. We cited language from a North Carolina case and a California case as the rule which was being adopted. Specifically, we examined *Killian v. State*, 184 Ark. 239, 42 SW.2d 12 (1931), and *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973), where the defendants attempted to introduce testimony that other parties had been responsible for the offense for which they were being tried. In each case, we upheld the trial court's refusal to allow the testimony because there was no evidence showing the other party was guilty.

In quoting two other jurisdictions, we noted:

The Supreme Court of North Carolina stated: A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible. State v. Wilson, 367 S.E.2d 589 (N.C. 1988).

The Supreme Court of California has recognized that a defendant has the right to present evidence of third party culpability but stated: [T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. People v. Kaurish, 802 P.2d 278 (Cal. 1990).

Following our holding in *Zinger*, it is evident that any inference that could be gained by allowing Foster's testimony does not directly prove a link between Landry and the murder. The testimony is speculative and remote. Therefore, we conclude that the

trial court did not abuse its discretion in the exclusion of this testimony.

### III. Validity of Search

Pyles next contends that evidence related to the film container should have been suppressed because there was an invalid search. Pyles contends that this search was violative of Ark. R. Crim. P. 12.1(a) because there is no reasonable way that an officer could think that he could be endangered by the contents of a film canister. Also, he contends that Rule 12.1(d) was also violated because "the officers did not remember what offenses were charged in the misdemeanor warrants."

Although decisions by the court of appeals are not controlling upon this court, Pyles challenged this very search in an appeal of his drug possession conviction. *Pyles v. State*, 55 Ark. App. 201, 935 S.W.2d 570 (1996). The court of appeals held that the search was valid under Rule 12.1.

In *Pyles*, the court of appeals relied on *Baxter v. State*, 274 Ark. 539, 626 S.W.2d 935 (1982), stating,

> "our Supreme Court held that a search incident to arrest requires no additional justification, finding that a search of containers, whether open or closed, may be conducted pursuant to a lawful arrest. Our Supreme Court has also said that Rule 12.1(d) allows officers to search for evidence of any crime, not just the crime for which an accused is being arrested.

The court of appeals properly applied our holding in *Baxter*. Accordingly, the trial court properly denied appellant's motion to suppress.

### IV. Scheduling of Trial

Pyles also contends that the trial court erred by requiring that the defense present his case at night without giving the jury a dinner break. Appellant contends that the trial was rushed from its initiation with the hurried selection of jurors, with the first day of trial continuing until 7:15 pm, and the second day beginning at 9:00 am with the State resting at 3:00 pm. The appellant began its

case at 3:15 pm. At 6:39 pm, appellant requested the court to adjourn until the next day; this was denied and the court stated that there would be no adjournment until the defendant rested its case. There was no break the rest of the day except an eight-minute break from 6:27 until 6:35 pm. Appellant contends that he was treated differently than the State. He contends that there was error in the trial court's continuing the trial well into the evening.

The trial court denied a request by defense attorney to adjourn for the night. The trial court admonished both attorneys saying that they both had "drug the case on and on and gone over stuff that didn't having any bearing on the case." The Court went on to say that there had been "more irrelevant testimony in this case than I have ever seen." Clearly by reprimanding both counsels, the court was not treating one side differently from the other. In fact, after the defense rested, the Court ruled that the State would have to introduce its case in rebuttal before adjourning for the night.

██ In *Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980), we held that "it is the duty of the trial judge to see not only that the trial proceeds in accordance with law but that it proceeds efficiently and effectively and in keeping with the ends of justice. He should be free to shut off long-winded and irrelevant testimony or questioning and to confine counsel to the actual issues in the case." Also, in *Clines, Holmes, Richley, & Ondorff v. State*, 280 Ark. 77, 656 S.W.2d 684 (1984), we found no abuse of discretion for a trial court to order a five-day recess as the trial was nearing a close. The Court found that absent proof of "great prejudice" there was no evidence of an abuse of discretion.

It is not necessary for us to rule on this point as the issue will be moot when the case is retried. However, we will note that while a trial court has great discretion in scheduling a trial in a manner to allow all necessary evidence to be presented, we do not find it desirable for a trial court to hurry a trial along. Trial courts should allow both sides ample time to fairly present their sides and allow the jury sufficient time to digest and consider all of the evidence within reasonable time restraints.

All other points raised on appeal are found to be without merit and moot following our decision to remand this case for a new trial.

Reversed and remanded.