ROBERT J. GLADWIN, Judge
Appellant Eric Lewis appeals the denial of his motion to suppress by the Ouachita County Circuit Court, arguing that the circuit court violated his Fifth Amendment right against self-incrimination by admitting statements he made to police because the interrogator made false promises of leniency. We affirm.
On March 3, 2015, appellant was charged with raping a seven-year-old girl in violation of Arkansas Code Annotated section 5-14-103 (Repl. 2013). On May 14, 2015, appellant filed a motion to suppress statements that he made to Arkansas State Police investigator Jerome Sanders, alleging that during an interrogation by the Camden Police Department, he "was questioned for extended periods of time and put under undue stress to the point that he was not able to knowingly, intelligently, or voluntarily waive his constitutional rights against self-incrimination." Appellant argued that any statements obtained were inadmissible either in the State's case-in-chief or for impeachment, citing the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article 2 sections 8 and 10 of the Arkansas Constitution, pursuant to Mincey v. Arizona , 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ; Grillot v. State , 353 Ark. 294, 107 S.W.3d 136 (2003) ; and Kennedy v. State , 325 Ark. 3, 923 S.W.2d 274 (1996). Appellant subsequently filed an amended motion to suppress in which he named the Arkansas State Police as having participated in the interrogations along with officers from the Camden Police Department. The State filed its response, again denying the allegations.
On August 13, 2015, the circuit court held a pretrial hearing regarding the suppression motion. At that hearing, the circuit court noted:
I did go back and listen to everything that [defense counsel] wanted me to listen to, looked at the timing [sic] frame for when you started, from when the interrogation started until it ended, [and] read the case law that was provided by your attorney and [the deputy prosecuting attorney].
What I found was, is that there's just not enough evidence there for me to throw it out and say that it's coercion. If you take the stand at trial, that's the only way that that can be used against you. Well, I shouldn't say that. That's not the case. But it can be used to impeach you at trial. But that's not to say that you still can't make the points that [defense counsel] makes in the brief, that you made in the brief about how the interrogation was conducted.
So, I'm going to deny the motion, but, obviously, you'll still have the opportunity to make those arguments at trial should you want to go to trial.
*319 An order denying the motion to suppress was filed on August 24, 2015.
At the July 8, 2016 jury trial a one-hour videotape of appellant's police interview was played for the jury during the direct examination of Investigator Sanders, who had interviewed appellant. Also, written statements made during that interview were introduced into evidence without objection as State's exhibits 5 and 6.[1] Investigator Sanders explained that while the portion of the interview that was played for the jury was approximately an hour long, the interview lasted a little more than three hours.
Appellant testified, stating that he graduated from the local high school in 2013. He initially stated that, in January, when he was interviewed by Investigator Sanders, he was at the station for four hours and that he did not believe he was free to go. However, appellant stated on cross-examination that he voluntarily went to the police station and that he could have left at any time. During his testimony, counsel noted in a bench conference that appellant went to the station voluntarily and took a polygraph test, which he failed, and that he was there for three hours after the polygraph test.
On July 8, 2016, the jury returned a guilty verdict, and appellant was sentenced to twenty-five years in the Arkansas Department of Correction (ADC). He filed a timely notice of appeal on August 10, 2018, and an amended notice of appeal on August 15, 2018.
The State has the burden of demonstrating by a preponderance of the evidence that custodial statements are given voluntarily and are knowingly and intelligently made. Kellon v. State , 2018 Ark. 46, 538 S.W.3d 206. In reviewing the circuit court's determination of voluntariness, we review the totality of the circumstances; we will reverse only if the circuit court's decision was clearly erroneous. Id. We have adopted a two-stage inquiry for instances in which defendants allege that false promises by police officers induced their custodial statements. First, we look to the nature of the officer's statement. If the officer made an unambiguous, false promise of leniency, then the statement elicited from the defendant is automatically inadmissible; if the officer made no promises of leniency, the statement is admissible. Id. ; see also Pyles v. State , 329 Ark. 73, 947 S.W.2d 754 (1997). If the officer's statements were of an ambiguous nature, however, we proceed to the second step of the analysis to examine the defendant's vulnerability under the following factors: age, education, intelligence, length of interrogation, experience with the justice system, and the delay between the defendants receiving Miranda warnings and the statement. Kellon , supra ; see also Clark v. State , 374 Ark. 292, 287 S.W.3d 567 (2008).
Appellant submits that the State failed to present evidence to support the assertion that appellant's statement was voluntary; rather, the entirety of its response to his motion to suppress was a general denial. Because no evidence was present at the suppression hearing, it is difficult to determine what factors, if any, the circuit court considered.
*320 Appellant cites several cases in which courts seriously questioned the voluntariness of the confession when the accused had been urged to confess in order to receive "help." See Pyles , 329 Ark. at 77, 947 S.W.2d at 755 (reversed when the police officer told the defendant that he would "help him in every way in the world"); Tatum v. State , 266 Ark. 506, 509, 585 S.W.2d 957, 958 (1979) (reversed when a deputy sheriff told the appellant that he would "do all he could to help him"); and Shelton v. State , 251 Ark. 890, 895, 475 S.W.2d 538, 541 (1972) (reversed based on the prosecuting attorney's statement that he would try to help the defendant "all that he could"). Appellant argues that here, Investigator Sanders likewise offered him help, stating:
I'm going to help you as much as I can, but you've got to be one hundred percent with me. And, so, now, that's what I'm telling you-I wish a lot of folks that's incarcerated right now had the opportunity-Like I told you, I love my job because I'm in a predicament where I can help people.... [H]e's going to take my recommendation.... The only way, the only way that you can get help is that if you man up and you tell why this the truth.... I've seen where I've helped people in other counties and I explain why, and they didn't serve any jail time. I've seen where people came in here and said, hey, I didn't do this and didn't do this and found out they was lying, and the prosecutor threw the book at them and they in prison right now.... But the people that I do help and that allow me to help them, they might still get in trouble, but they get a hell of a lot better deal than getting the book thrown at them.
Appellant maintains that these statements, taken at face value, are clearly unambiguous promises of leniency offered in exchange for a confession. The State offered no evidence that Investigator Sanders followed through and made any attempt to help appellant; accordingly, he suggests that the promises appear to have been false. As such, he argues that no further analysis is necessary; the verdict should be reversed; and his case should be remanded for a new trial.
Moreover, appellant urges that should the court find there is ambiguity in the statements made by Investigator Sanders, further analysis to determine the voluntariness of his statements also supports a reversal. The court must examine his vulnerability pursuant to Kellon , supra , considering several factors: (1) the age, education, and intelligence of the accused; (2) how long it took to obtain the statement; (3) the defendant's experience, if any, with the criminal justice system; and (4) the delay between the Miranda warnings and the confession. Id.
With respect to these vulnerability factors, appellant argues that they favor a holding that his statements were not voluntary. He was twenty years old at the time the statements were made. Although evidence introduced at trial indicated that he was a high school graduate, no further information in the record expounds on his intelligence or abilities. He reiterates that Investigator Sanders's interview lasted more than three hours, but only approximately one hour of the interview was presented at trial. There is no evidence in the record regarding appellant's familiarity with the criminal justice system. There is also no clear indication of how much time transpired between the Miranda warning and appellant's statement; the probable-cause affidavit merely recites that appellant was given the Miranda warnings without any confirmation as to the timing *321 thereof.[2] Considering these factors, together with appellant's nearly continuous denials and pleas for assistance during the interview, appellant argues that he was vulnerable and that his statement was therefore involuntary and inadmissible.
The State suggests that appellant's argument is not preserved for appeal because he made a different argument before the circuit court. See Byrd v. State , 2016 Ark. App. 489, 505 S.W.3d 699. Appellant argued below that during the interrogation, he "was questioned for extended periods of time and put under undue stress to the point that he was not able to knowingly, intelligently, or voluntarily waive his constitutional rights against self-incrimination." The circuit court specifically stated in its ruling that there was not enough evidence to support a finding of "coercion." Although the State claims appellant does not argue that he was coerced to confess-rather, that the interrogator made false promises of leniency-we hold that the argument was substantially similar enough for us to reach the merits of appellant's argument. We note that the word "coercion" appears only one time in the record. It appears neither in appellant's motion to suppress nor in any responsive pleading filed by the State. The single time it appears is during the circuit court's oral ruling from the bench denying appellant's motion.
The relevant issue properly before us is whether appellant made a voluntary statement. We hold that he did and that there is no basis to suppress his voluntary, uncoerced statements based on the two-part inquiry in Kellon , 2018 Ark. 46, at 2, 538 S.W.3d at 207. At a hearing on appellant's motion to suppress, no evidence was introduced by either party, but the circuit court "did go back and listen to everything that [defense counsel] wanted [him] to listen to, looked at the timing frame for when you started, from when the interrogation started until it ended, read the case law that was provided by your attorney and [the prosecutor]." The circuit court explained that "what I found ... is that there's just not enough evidence there for me to throw it out and say that it's coercion." Regarding appellant's argument that Investigator Sanders made unambiguous, false-promises of leniency during the interview, we hold that neither the isolated comments that appellant objects to in his argument nor the longer interview indicate that Investigator Sanders made any promise to appellant or created an impression that he would be treated with leniency. Moreover, nothing in the statement suggests that appellant did not understand what was taking place; to the contrary, it shows that he understood his situation.
Our review of Investigator Sanders's comments does not indicate that he either promised or even implied that he would not arrest appellant or stop investigating the case or that appellant would not be held accountable for his actions. Law enforcement officers are allowed to use some psychological tactics and coercive statements in eliciting a custodial statement from the accused so long as the means employed are not calculated to procure an untrue statement, and the accused's free will is not completely overborne. E.g. , Friar v. State , 2016 Ark. 245, 2016 WL 3346565. We hold that Investigator Sanders's remarks cannot be construed as a promise of leniency; rather, they were utilized to convince appellant to truthfully explain what had happened.
*322 Investigator Sanders told appellant that he did not know whether he would be able to avoid jail time or registration as a sex offender and said, "I've seen it go both ways." Investigator Sanders explained, "I'm not going to sit here and lie to you and tell you that you're not going to get into any trouble ... because I don't know." He also said that "telling the truth [is] your way of fighting for it." Later, he said, "[T]he system is made for you to tell the truth" and that sometimes when you tell the truth you get hurt, but "man to man, you made that bed ... and you've got to lie in it."
Our supreme court has held that when an officer does not falsely lead a defendant to believe that the defendant will be released following the interview, the confession is not the product of a false promise of leniency. E.g. , Fuson v. State , 2011 Ark. 374, 383 S.W.3d 848. Likewise, when an interviewing officer merely offers to tell the prosecuting attorney that the accused cooperated, our supreme court has held that this does not constitute a false promise of leniency that renders the statement involuntary. Winters v. State , 2013 Ark. 193, 427 S.W.3d 597 ; Goodwin v. State , 373 Ark. 53, 281 S.W.3d 258 (2008). Investigator Sanders never told appellant that he would receive leniency for being truthful; he simply made it clear that he would tell the prosecutor if appellant was truthful and remorseful, as in Goodwin , but that the prosecutor would make the decision about what charges to file.
Moreover, even if any of the statements made by Investigator Sanders were deemed ambiguous, our review under the Kellon factors as to whether appellant was vulnerable-age, education, intelligence, length of interrogation, experience with the criminal justice system, and any delay between the reading of the Miranda warnings and the statement-would not warrant a reversal.
It is undisputed that appellant has a high-school education and turned twenty-one less than a month after he made the statements in question. He understood the questions he was asked, gave articulate responses, and asked questions-which support that he understood what was taking place at the suppression hearing. At the time of the interrogation, appellant was able to verbally engage at length and in depth with Investigator Sanders. It is also undisputed that appellant has a history with the criminal justice system and was at least somewhat familiar with what was taking place.
The probable-cause affidavit indicates that appellant was given Miranda warnings before his polygraph test on January 15, 2015, and that he waived his rights and agreed to answer questions. Appellant testified that he was at the station for four hours, but he clarified that the first hour consisted of the administration of the polygraph test, followed by three hours of interrogation discussed by Investigator Sanders in his testimony. Accordingly, there was no significant delay to consider. We hold that none of the Kellon factors suggests that appellant was so vulnerable that he could be led into making a statement against his will. He admitted that he was at the police station voluntarily and that he was free to go at any time. He never indicated that he did not understand what was taking place.
Contrary to the cases cited by appellant involving blatant offers of help, Investigator Sanders never stated that he would help appellant get out of trouble or that he would work to lessen the charges or the punishment appellant would face. A review of Investigator Sanders's comments in the context of the entire interrogation and resulting statement supports the circuit *323 court's finding that there simply was no coercion or promise of leniency.
Affirmed.
Glover and Vaught, JJ., agree.

State's exhibit 5, written by appellant, stated, "I was drunk, and I touch her butt and put my finger in front part. That all." It also stated, "I was drunk, and I touch her butt and front area. That's all. I apologize for what happen to [victim's name]." State's exhibit 6 contained a list of things that appellant told Investigator Sanders during the interview, which Investigator Sanders printed, followed by a line, then a statement in cursive handwriting that appellant wrote, signed, and dated that said, "I'm extremely sorry for what happen to [victim's name]."

The probable-cause affidavit states that appellant was given warnings pursuant to Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before his polygraph test on January 15, 2015, and that he waived his rights and agreed to answer questions.