N. MARK KLAPPENBACH, Judge
Appellant John Paul Lovett was convicted by a jury in the Franklin County Circuit Court of aggravated residential burglary with a firearm enhancement, second-degree battery, and theft of property. He was sentenced as a habitual offender to a total of fifty-five years' imprisonment. Before trial, the circuit court denied appellant's motion to suppress his statement made to law enforcement officers. Appellant now argues on appeal that the circuit court erred in denying his motion to suppress due to his vulnerability to police promises of leniency. We affirm.
In his motion to suppress, appellant alleged that his statement was not made freely, voluntarily, and knowingly because the officers told him that they would get him mental-health treatment, drug-rehabilitation treatment, and a brief prison sentence if he provided a truthful statement. He claimed that he would not have given a statement without these representations. Chief Deputy Jeff Wood of the Franklin County Sheriff's Office was the only witness to testify at the suppression hearing. Wood testified that he, along with Franklin County Sheriff Anthony Boen, interviewed appellant on July 3, 2017, about an incident that had occurred on May 27. Appellant had previously declined to give a statement to officers, but Wood had subsequently spoken with appellant's girlfriend, Kimberly Munholland, who indicated that appellant now wanted to talk. Munholland told Wood that appellant needed mental-health treatment and drug rehabilitation, and she wanted Wood to recommend it; Wood said that he agreed with her.
Appellant was detained on other charges in a different county at the time of the interview. The transcript of the recorded interview was admitted into evidence. At the beginning of the interview, Wood told appellant about his conversation with Munholland. Appellant said that Munholland had told him that "she made a statement and that she wanted me to go ahead and do the same." Wood then said that
[w]e talked about getting you or recommending getting you into a mental facility. She said that's what you would want or need. That's really more than what you need than prison, and I told her that I wouldn't have a problem recommending that. I can't make you promises, but I can recommend that to the prosecutor, okay?
*549 Sheriff Boen then stated, "You know I'll go to bat for you." Appellant did not respond to these statements. After explaining what they wanted to talk about, Wood advised appellant of his Miranda rights, and appellant signed a waiver of those rights. Appellant then described how he and an accomplice had broken into a man's house to rob him of his pills and how he had hit the man and stolen his gun. At the end of the interview, appellant asked whether the prosecutor would be interested in helping him and what the options may be. The officers told him that the prosecutor and the defense attorney could negotiate a plea deal and take the officers' recommendation into consideration.
Wood testified that he made a written recommendation to the State for appellant to receive "rehabilitation and mental help" as reflected by a signed document admitted into evidence. Wood said that at the time of the interview, appellant did not appear to be under the influence of drugs or alcohol or impaired in any way, that he was thirty-two years old, that he has a GED, and that he has an extensive criminal history. The circuit court denied the motion to suppress, and appellant was subsequently convicted at trial.
It is well settled that a statement induced by a false promise of reward or leniency is not a voluntary statement. Fuson v. State , 2011 Ark. 374, 383 S.W.3d 848. When a police officer makes a false promise that misleads a prisoner and the prisoner gives a confession because of that false promise, then the confession has not been made voluntarily, knowingly, and intelligently. Id. Because the object of the rule is not to exclude a confession of truth but to avoid the possibility of a confession of guilt from one who is, in fact, innocent, a person seeking to have a statement excluded on the basis that a false promise was made must show that the confession induced by the false promise was untrue. Id.
In determining whether there has been a misleading promise of reward, we consider the totality of the circumstances. Id. The totality determination is subdivided into two main components: the statement of the officer and the vulnerability of the defendant. Id. If during the first step, the court decides that the officer's statement is an unambiguous false promise of leniency, there is no need to proceed to the second step because the defendant's statement is clearly involuntary. Id. We also do not move forward to the second step if we conclude that no false promise of reward or leniency was made. If, however, the officer's statement is ambiguous, making it difficult for us to determine if it was truly a false promise of leniency, we must proceed to the second step of examining the vulnerability of the defendant. Id. Factors to be considered in determining vulnerability include (1) the age, education, and intelligence of the accused; (2) how long it took to obtain the statement; (3) the defendant's experience, if any, with the criminal-justice system; and (4) the delay between the Miranda warnings and the confession. Id. We will not reverse the circuit court's denial of a motion to suppress a statement unless it is clearly erroneous or clearly against the preponderance of the evidence. Roberts v. State , 352 Ark. 489, 102 S.W.3d 482 (2003).
Appellant argues that Wood's agreement to recommend treatment for him followed by Boen's promise to "go to bat" for him was equivalent to the officer's promise of help in Pyles v. State , 329 Ark. 73, 947 S.W.2d 754 (1997). In Pyles , the appellant argued that his confession to murder was induced by an officer's promise that he would "do everything in the world [he] could" for him. The State conceded that a questionable promise may have been *550 made, and the supreme court examined the vulnerability of the appellant. The court considered the fact that Pyles had been interrogated for several hours by other officers before being questioned by the officer who made the promise; this officer knew Pyles before his arrest through baseball and had visited with Pyles about that; and Pyles had become emotional during the interrogation and held the officer's hands and wept. The court concluded that the officer made a false promise that resulted in an involuntary confession.
Appellant contends that Boen's promise to "go to bat" for him conveyed that he would do his best to see that appellant got the help he needed. We agree with the State, however, that Boen's statement did not amount to a blanket statement to help appellant as in Pyles ; rather, it was an affirmation of the statement Wood had just made regarding making a recommendation to the prosecutor. Wood did, in fact, make such a recommendation; thus, we do not find his statement to be a false promise. See Wallace v. State , 2009 Ark. 90, 302 S.W.3d 580 (holding that an officer's statement that a jury would not convict someone who was acting in self-defense was not a false promise).
Even if we were to conclude that the officers made an ambiguous false promise of leniency, we do not find that appellant was especially vulnerable to the officers' statements. Appellant argues that he was vulnerable because he needed mental-health treatment and drug rehabilitation, and he told the officers that he was "having a hard time" in jail and that he was taking prescription medicine. There was no indication, however, of the reason appellant was prescribed medicine, and the only specific complaints about his jail stay were that he was "with a bunch of kids," there was "nothing to do," and "it's just all negativity." There was also no evidence that appellant became emotional during the interview; he was in his thirties and had obtained a GED; he was given his Miranda warnings immediately before he began to tell the officers what had transpired; the entire interview lasted less than an hour; and he had considerable experience with the criminal-justice system. This evidence does not demonstrate that appellant was so vulnerable that the officers' statements rendered the confession involuntary. In reviewing the totality of the circumstances, we conclude that appellant's confession was voluntarily, knowingly, and intelligently given. Accordingly, we affirm the circuit court's denial of appellant's motion to suppress.
Affirmed.
Gruber, C.J., and Murphy, J., agree.