Cite as 2020 Ark. App. 417

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-19-626

| | |
|---|---|
| DELVIN NEAL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** September 23, 2020<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. 22CR-18-59]<br><br>HONORABLE SAM POPE, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Delvin Neal was convicted by a jury in the Drew County Circuit Court of drug trafficking, possession of drug paraphernalia, and three counts of endangering the welfare of a minor. He was sentenced to an aggregate term of forty years in the Arkansas Department of Correction. Before trial, the circuit court denied appellant's motion to suppress his statement made to law enforcement officers. Appellant now argues on appeal that the circuit court erred in denying his motion to suppress because officers made unambiguous false promises of leniency. We affirm.

In his motion to suppress, appellant alleged that his statement was not made freely, voluntarily, and knowingly because the statements were made in response to offers of leniency by the officers. Neal claims Officer Ben Michel or Officer James Slaughter unambiguously offered to eliminate or reduce charges against him if Neal would name "the man" who was bringing the methamphetamine into the area. Both Officer Michel and

Officer Slaughter testified at the suppression hearing. Michel testified that he, along with Slaughter, interviewed Neal on April 4, 2018, following his arrest at the home Neal shared with his girlfriend. Neal was on probation at the time.

A DVD recording of the interview was admitted into evidence. Prior to questioning appellant, Slaughter advised appellant of his *Miranda* rights, and appellant signed a waiver of those rights. The entire interview lasted less than forty minutes. Appellant's counsel played clips from the video during the suppression hearing and questioned the officers about their alleged promises of leniency. Michel testified that the clips were taken out of context and that he and Slaughter explained to appellant that the officers ultimately have "no say-so of how long and how many charges and what charges are [going to] stick, but it goes through a process. And we can recommend." Slaughter testified that he told appellant they could not make promises, but he could go to the prosecutor and discuss which charges are filed.

Ultimately, appellant did not at any point during the interview admit that the drugs found in the house belonged to him, and he fervently denied that he was the person responsible for distributing drugs in the area. Although he offered to identify four or five people actually responsible for trafficking drugs into the city in exchange for probation, the interview concluded without appellant providing a single name to the officers.

Slaughter testified that following the interview, he spoke with Deputy Prosecutor Sandra Bradshaw and an FBI agent in El Dorado regarding an attempt to turn Neal into a confidential informant with the understanding that his cooperation would affect the recommendation he was given. Specifically, Slaughter testified that he spoke with Bradshaw

about reducing appellant's charges contingent upon his help. The circuit court denied the motion to suppress, and appellant was subsequently convicted at trial.

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Flanagan v. State*, 368 Ark. 143, at 155, 243 S.W.3d 866, 875 (2006). In cases involving a ruling on the voluntariness of a confession, this court makes an independent determination based on the totality of the circumstances. *Boyd v. State*, 2016 Ark. App. 407, at 10–11, 500 S.W.3d 772, 779. We review the circuit court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Id.* Any conflicts in testimony are for the circuit court to resolve as it is in a superior position to determine the credibility of the witnesses. *Id.* We look to see if the confession was the product of free and deliberate choice rather than coercion, intimidation, or deception. *Id.*

If a police officer makes a false promise that misleads the person in custody, and the person in custody gives a confession because of that false promise, then the confession has not been voluntarily, knowingly, and intelligently made. *Id.* In determining whether there has been a misleading promise of reward, we look at the totality of the circumstances. *Fuson v. State*, 2011 Ark. 374, 383 S.W.3d 848.

We examine first the officer's statement and second the vulnerability of the defendant. *Wallace v. State*, 2009 Ark. 90, at 12, 302 S.W.3d 580, 588. If, during the first step, we decide that the officer's statements are unambiguous false promises of leniency,

there is no need to proceed to the second step because the defendant's statement is clearly involuntary. *Brown v. State*, 354 Ark. 30, 33, 117 S.W.3d 598, 600 (2003). If, however, the officer's statement is ambiguous, making it difficult to determine if it was truly a false promise of leniency, we must proceed to the second step of examining the vulnerability of the defendant. *Id*. at 33–34, 117 S.W.3d at 600. For the statement to be involuntary, the promise must have induced or influenced the confession and the defendant must show that the confession was untrue because the object of the rule is not to exclude a confession of truth, but to avoid the possibility of a confession of guilt from one who is innocent. *Flanagan v. State*, 368 Ark. 143, 155–56, 243 S.W.3d 866, 875 (2006).

Appellant argues that the promises made by the officers in this case were even more explicit and specific than the officer's promise of help in *Pyles v. State*, 329 Ark. 73, 947 S.W.2d 754 (1997). In *Pyles*, the appellant argued that his confession to murder was induced after an officer he knew from a baseball league promised to "help in every way in the world" if he confessed. The State conceded that a questionable promise may have been made, and the supreme court examined the vulnerability of the appellant. The court considered the fact that Pyles had been interrogated for several hours by other officers before being questioned by the officer who made the promise. The court concluded that the officer made a false promise that resulted in an involuntary confession.

Here, appellant lists several statements by the officers that this court finds concerning. In particular, Officer Michel's offer to eliminate a misdemeanor charge on the information sheet given to the prosecutor was inappropriate, and his statement that the time Neal will spend in prison depends on what he tells the officers was an egregious mischaracterization

4

of the judicial process. However, Neal's responses to these attempts by Michel to elicit information was not a confession but a steadfast denial that the drugs found in the home were his and a denial that he was "the man" selling drugs in the community. Additionally, Officer Slaughter tempered Michel's attempts with repeated clarifications that the prosecutor is the ultimate decision maker when it comes to which charges Neal will face and that any recommended charges made by the officers can be changed by the prosecutor. It is also clear that appellant understood that the prosecutor alone would the make the final decision regarding charges, at one point in the interview asking the officers what kind of deal could be made with the prosecutor.

In *Winters v. State*, 2013 Ark. 193, at 7–8, 427 S.W.3d 597, 602, the court held that an offer to tell the prosecuting attorney that the accused cooperated does not constitute a false promise of leniency. Additionally, Slaughter testified he did, in fact, speak to a deputy prosecuting attorney about a reduction in charges in exchange for appellant's cooperation as a confidential informant. We have long held that "it is a *false* promise that renders a confession involuntary." *King v. State*, 317 Ark. 293, 302, 877 S.W.2d 583, 588 (1994) (emphasis in the original).

Even so, there is enough contradiction within the statements by the officers to conclude that they were ambiguous. Therefore, the second prong of the test should be analyzed. Factors to be considered in determining vulnerability include (1) the age, education, and intelligence of the accused; (2) how long it took to obtain the statement; (3) the defendant's experience, if any, with the criminal-justice system; and (4) the delay

5

between the *Miranda* warnings and the confession. *Boyd*, 2016 Ark. App. 407, at 11, 500 S.W.3d at 779.

Appellant does not argue in his brief that he was especially vulnerable; instead, he relies fully on his assertion that the first prong of the test is met, so his statement is involuntary as a matter of law. In its order, the circuit court specifically found that appellant was thirty-two at the time of his interrogation; that he was given his *Miranda* rights prior to interrogation; that he was told by officers that he could stop the interview at any time to which he replied, "I mean, I'm listening"; and that he declined to cooperate in any manner. Additionally, our de novo review of the record and the interview itself shows that appellant was familiar with the legal system as he was on probation at the time of the interview and that the interview lasted less than forty minutes.

Therefore, in reviewing the totality of the circumstances, we conclude that although the statements made by officers to appellant were ambiguous, appellant was not especially vulnerable to the officers' statements. Accordingly, we affirm the circuit court's denial of appellant's motion to suppress.

Affirmed.

SWITZER and BROWN, JJ., agree.

*Terrence Cain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.