Cite as 2026 Ark. App. 1

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-23-821

| | | |
|---|---|---|
| KENNETH STEWARD | | Opinion Delivered January 7, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 04CR-19-2939] |
| | | |
| | | HONORABLE BRAD KARREN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Kenneth Steward was convicted by a jury of raping[1] his daughter, MC.[2] He appeals

contending that the circuit court committed reversible error by (1) denying his motion to

suppress his custodial statement; (2) permitting the State to admit improper evidence under

Arkansas Rule of Evidence 404(b); (3) denying his request to remove two jurors for cause;

and (4) denying his motion for directed verdict. We affirm.

Preservation of an appellant's right to freedom from double jeopardy requires a review

of the sufficiency of the evidence before a review of trial errors. *Lester v. State*, 2024 Ark.

App. 206, 687 S.W.3d 344. We consider all the evidence presented to the jury, whether

---

[1]The jury acquitted Steward of a second count of rape and one count of second-degree sexual assault.

[2]MC was born in 2003. According to Steward, he and MC's mother had been together for years and married in 2015. Steward adopted MC in 2017.

admitted properly or erroneously. *Cuevas-Flores v. State*, 2024 Ark. App. 451, 699 S.W.3d 156. We view the evidence in a light most favorable to the State. *Clevenger v. State*, 2025 Ark. 128, 719 S.W.3d 453.

In 2019, sixteen-year-old MC went to school and spoke with her uncle, who was also the school resource officer. MC said Steward had raped her the night before. Her uncle made a child-abuse-hotline report. The police became involved. MC reported that Steward had come into the bedroom she shared with her sister, told her to go to the living room, had her lie on the couch, pulled her pants and his pants down, and inserted his penis into her vagina. She said her mother was in the shower. Afterward, he sent her back to bed. MC tearfully told her sister that Steward had raped her again.

Steward was an employed married man in his thirties. He had no criminal history. The same day that MC reported the rape, Steward was arrested at the post office where he worked. He was taken to the local police department where he was advised of his *Miranda* rights, and he agreed to speak to the police. The interview was recorded on videotape. He did not display any difficulty understanding or any other impairment. He signed the *Miranda* form at 5:11 p.m., and the interview ended at approximately 10:30 p.m.

The officers maintained a conversational tone, and they took breaks. Steward was given water; he laughed occasionally. Steward repeatedly denied that he had raped MC. He denied it dozens of times. Steward never asked for counsel. Officers asked Steward whether he had forcible or consensual sex with MC; they wanted to know the specifics and "why it

2

happened." They told him that his refusal to acknowledge what happened made him "look like the bad guy."

About an hour and fifteen minutes into the interview, Steward said the previous night was his wedding anniversary, MC "came on to" him, "one thing led to another," and they had consensual sex. As the interview continued, the officers urged Steward to be totally honest. They said that they did not want to think of him as a "monster" and believed him when he said he was not violent with MC, but they wanted to know about the other instances MC had alleged. Toward the end, one officer said he was "getting tired of trying to help." Steward said that he was trying to tell the truth so he could go home and go to sleep. Steward insisted it happened only once and that MC was known to lie about things. The officers told him that DNA evidence was being sought from the home. Steward confirmed his DNA would be found on the couch where they had sex. He permitted them to take his DNA by swabbing the inside of his mouth.[3]

MC testified that her father raped her. DNA testing proved the presence of Steward's DNA in her vagina; his semen was found on the underwear she gave police. MC said Steward was the home's disciplinarian and that she struggled to follow her parents' strict rules. MC's sister confirmed that Steward came to get MC from their bedroom that night while their

---

[3]Defense counsel argued that Steward eventually confessed to rape, but his admission was the product of the officers' deceit by their downplaying the criminality of consensual sex versus forcible rape, their false promises of leniency while telling Steward they were trying to help, and the psychological coercion of two white officers interrogating a black man. The circuit court denied the motion to suppress. This ruling is one of Steward's points on appeal.

mother was in the shower and that MC returned in tears saying that Steward had raped her again.

MC and three of her sisters testified[4] that Steward had previously summoned them all into the living room, ordered them to take off their clothes in front of him, and made them touch their vaginas. The girls' ages were between ten and sixteen when this occurred, and they said MC's mother was present for at least part of this.[5] The two boys in the home were not present because they had been sent to their rooms. Steward got angry at the girls when they were not "doing it right," and he threatened to get his belt and whip them.

MC's mother defended Steward, and he testified in his own defense. The jury found him guilty of rape, and he was sentenced to forty years in prison. This appeal followed.

Steward contends that the State failed to present sufficient evidence that he raped MC. Steward challenges all the girls' credibility, the State's failure to corroborate MC's testimony, and faulty DNA evidence. In sum, he argues that the jury was left to speculate. We disagree.

We consider only the evidence that supports the verdict. *Clevenger*, *supra*. Sufficient or substantial evidence is evidence of sufficient force and character that it will, with

---

[4]This testimony was the subject of a pretrial motion to suppress. Defense counsel argued that the testimony was impermissible because it painted Steward as a bad person and was not sufficiently similar to MC's rape accusation. The State successfully argued that the testimony fit within the pedophile exception. Steward appeals the admission of this testimony.

[5]MC's mother is stepmother to some of the children in the home.

reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Witness credibility is an issue for the jury, not the court; the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Langlois v. State*, 2023 Ark. App. 263, 666 S.W.3d 884. A rape victim's uncorroborated testimony can be sufficient to support a conviction. *Id.*

There is sufficient evidence to support Steward's conviction. It was up to the jury to determine what testimony was credible and what evidence was compelling. In his police interview, Steward admitted he had sex with MC the night before in the home. DNA evidence supported the conclusion that Steward had sex with his daughter. The circuit court did not err in denying his motion for directed verdict.

Steward also argues on appeal that the circuit court clearly erred when it denied his motion to suppress his confession, which he claims was the product of psychological coercion, deceit, and false promises of leniency. He argues that he finally told the officers what they wanted to hear in part because the police wrongly convinced him that it was not as bad legally if he admitted that the sex was consensual. We hold that Steward has failed to demonstrate reversible error.

The State has the burden of demonstrating by a preponderance of the evidence that custodial statements are given voluntarily and are knowingly and intelligently made. *Kellon v. State*, 2018 Ark. 46, 538 S.W.3d 206. We review the totality of the circumstances and reverse only if the circuit court's decision was clearly erroneous. *Id.* There is a two-stage

5

inquiry for instances when a defendant alleges that false promises by police officers induced a prejudicial custodial statement. If there was an unambiguous false promise of leniency, then the statement elicited from the defendant is automatically inadmissible; if the officer made no promises of leniency, the statement is admissible. However, if the officer's statements were ambiguous, we examine the defendant's vulnerability considering factors such as his age, his education, his intelligence, the length of the interrogation, his experience with the justice system, and the delay between the defendant's receiving *Miranda* warnings and the incriminating statements. *See Lewis v. State*, 2019 Ark. App. 45, 568 S.W.3d 317.

An officer may try to persuade an accused to tell the truth or to answer questions, even though the interrogator may have made misrepresentations of fact, so long as the means employed are not calculated to procure an untrue statement and the confession is otherwise voluntarily made. *Nelson v. State*, 2025 Ark. 22, 705 S.W.3d 876. These officers repeatedly told Steward that they wanted him to be 100 percent honest and forthcoming. They told him they would rather not think that he was a "bad guy" or "monster," urging him to tell them everything. They asked whether it was forced or consensual sex, and they urged him to talk about the other sexual encounters MC had alleged. Steward admitted he had sex with MC, but he blamed her. He vehemently denied he had sex with her more than once; he never budged from that stance.

When he was interviewed, Steward was in his thirties, gainfully employed, and married. There is no indication that he possesses below-normal intelligence or has any impairments. He was advised of his *Miranda* rights before he agreed to speak with the

6

officers.  The interview was calm and cordial; there were breaks; he was given water; the total time that he was in the interview room was not extraordinarily long.  He confessed approximately one hour and fifteen minutes into the interview.  *Compare Williams v. State*, 2018 Ark. App. 277, 550 S.W.3d 42.  After reviewing the totality of the circumstances here, we hold that the circuit court did not clearly err in denying his motion to suppress his confession that he had sex with MC.

Next, we consider Steward's contention that the circuit court abused its discretion in allowing the State to present the testimony of MC and her sisters about Steward's forcing the girls to undress, sit in front of him, and touch their vaginas.  The circuit court allowed this testimony as falling under the "pedophile exception" to Arkansas Rule of Evidence 404(b).  He argues that the alleged behavior was not sufficiently similar to the rape charge to be allowed into evidence.  Steward has failed to demonstrate reversible error.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he or she acted in conformity therewith, but it may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Ark. R. Evid. 404(b) (2025).  The "pedophile exception" permits evidence of the defendant's prior similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship and to prove the depraved instinct of the accused.  *Oliver v. State*, 2020 Ark. App. 498, 612 S.W.3d 738; *Dillard v. State*, 2020 Ark. App. 419.  Such evidence is also admissible to show the familiarity of the parties

and antecedent conduct toward one another and to corroborate the testimony of the victim. *Dillard*, *supra*. The admission or rejection of evidence is left to the sound discretion of the circuit court, and we will not reverse in the absence of a showing of manifest abuse. *Id.* This is a high threshold that requires the circuit court to have acted improvidently, thoughtlessly, or without due consideration. *Id.*

We reject Steward's contention that the behaviors were too dissimilar to fall under the pedophile exception. The girls were all sixteen or younger when this alleged behavior happened. Only the girls were summoned to the living room, not the boys. It happened in the same home and the same room. Steward was their father or stepfather and the authority figure in the home. Steward required the girls to take off their clothes and do what he told them. While not precisely the same conduct, it is sufficiently similar. This was sexually abusive behavior perpetrated on young female siblings by their father/stepfather. Physical similarities between the alleged victim and the Rule 404(b) witness such as age and gender are relevant when there is not "identical" conduct toward each by the accused. *Sublett v. State*, 2025 Ark. App. 374.

This evidence helped to show Steward's impulses and behavior were far outside the expected range for any man, especially a father or stepfather. It further corroborated MC's allegation that she was required to do what Steward demanded of her sexually, whether with her sisters or alone with her father. *See Wheeler v. State*, 2025 Ark. App. 407 (testimony from girls was properly admitted under pedophile exception; the girls were close in age to rape victim; all of Wheeler's behavior was sexually abusive; it was relevant to show Wheeler's

8

depraved sexual instinct and proclivity for molesting young girls); *Hyatt v. State*, 63 Ark. App. 114, 117, 975 S.W.2d 443, 445 (1998) (explaining the importance of the "entire picture" theory in child-sexual-offense cases). We hold that the circuit court did not abuse its discretion when it admitted the challenged testimony under the pedophile exception.[6]

Steward's final argument on appeal is that the circuit court abused its discretion by denying his attorney's motion to excuse two jurors for cause. During trial, defense counsel learned two jurors were related to officers in the police department that investigated this case. The defense argued that this made them biased against Steward, so those jurors should be excused and two alternate jurors seated. The circuit court conducted an inquiry. Both jurors acknowledged their relationships with the officers, neither of whom worked on this case directly. The jurors were unequivocal in stating that they could be objective, fair, and impartial. The circuit court denied the motion, and Steward argues that the ruling constitutes reversible error. We disagree.

A criminal defendant is guaranteed under the Constitution (1) a trial by a jury capable and willing to decide the case solely on the evidence before it, and (2) a trial judge who is ever watchful to prevent prejudicial occurrences and who will determine the effect of alleged prejudicial occurrences. *Tillman v. State*, 2024 Ark. App. 609, 704 S.W.3d 310. A juror is

---

[6]Steward's trial attorney further argued to the circuit court that the probative value of the evidence was substantially outweighed by its prejudicial effect. On appeal, Steward does not make this argument, so it is abandoned and will not be considered on appeal. *Terry v. State*, 2024 Ark. App. 130, 684 S.W.3d 653.

presumed to be unbiased and qualified to serve. *Id.* It is the defendant's burden to prove that a juror could not be impartial, and as a result, there is a reasonable probability of prejudice. *Id.* We defer to the circuit court's opportunity to observe jurors and gauge their answers in determining whether their impartiality was affected; the circuit court is allowed to exercise its discretion. *Hughes v. State*, 2024 Ark. App. 179, 686 S.W.3d 586.

Based on the jurors' answers, the circuit court was satisfied that they could remain impartial and fair to Steward. We hold that Steward has failed to demonstrate on this record that the denial of his motion to remove them constituted an abuse of discretion. *See Childs v. State*, 2010 Ark. App. 675 (due to juror's ultimate assurance to the court that she could be objective, the circuit court did not err by refusing appellant's midtrial motion to remove her due to belated realization that she knew the mother of one of the victims).

Affirmed.

GLADWIN and BROWN, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.